**In re GATEWAY APPAREL, INC., Debtor.**

**Bankruptcy No. 97–40296–172.**

United States Bankruptcy Court, E.D. Missouri, Eastern Division.

Aug. 18, 1999.

Leonora S. Long, Office of the United States Trustee, St. Louis, MO, United States Trustee.

Gregory D. Willard, Bryan Cave, LLP, St. Louis, MO, for Debtor.

Charles W. Riske, Clayton, MO, trustee.

Robert Scott Moore, Lewis, Rice, St. Louis, MO, for the Employees.

## ORDER

JAMES J. BARTA, Chief Judge.

The hearing on the Chapter 7 Trustee's "First Omnibus Objection to Wage, Sever-

ance Pay and Vacation Pay Claims" (Document No. 584) against certain claims and requests filed on behalf of former employees ("Employees") of the Debtor, was called on August 12, 1999. The Trustee appeared by Counsel and presented oral argument on the record. Counsel for eleven of the Employees appeared and presented oral argument in support of their response (Document No. 640) to the Trustee's objections. On consideration of the record as a whole, the Court announced its determinations and orders from the bench.

This is a core proceeding pursuant to Section 157(b)(2)(B) of Title 28 of the United States Code. The Court has jurisdiction over the parties and this matter pursuant to 28 U.S.C. Sections 151, 157 and 1334, and Rule 9.01 of the Local Rules of the United States District Court for the Eastern District of Missouri.

The Debtor filed a Petition for Relief under Chapter 11 on January 13, 1997. The Debtor was a vendor of women's ready to wear apparel with headquarters in St. Louis, Missouri. In order to reduce expenses, the Debtor closed and vacated approximately 39 stores over a period of several months prior to the commencement of the Chapter 11 case. As a result, during the pendency of the Chapter 11 case, the Debtor continued to sell its merchandise on a wholesale basis to approximately 35 independently operated stores, and on a retail basis through its remaining 91 stores in 18 states. Approximately one year later, on January 26, 1998, the Debtor In Possession filed an application to convert, and the case was converted to a liquidating case under Chapter 7.

Each of the Employees identified in this matter, and several other persons holding similar claims, were employed by the Debtor prior to the commencement of this case, and continued to be employed for varying periods of time up to and in some instances after conversion to Chapter 7. For the most part, they were management level employees who had been identified by the Debtor as critical players in the Debtor's ability to successfully reorganize under Chapter 11. The Chapter 7 Trustee acknowledged that prior to the commencement of the Chapter 11 case, these Employees were the beneficiaries of the Debtor's severance pay policy that was generally available to all employees. Under the policy, a cash payment was to be made to employees if the employee's position with the Debtor were to be eliminated.

Approximately one month prior to the commencement of the Chapter 11 case, these Employees and the other similarly situated persons, signed separate severance agreements ("Severance Agreements") that provided for a cash payment equal to a certain number of months' salary plus the annual premiums for the Employee's participation in the Debtor's benefits plans, if the Employee were to be terminated within 36 months after the date of the Severance Agreement. In the converted Chapter 7 case, the Employees have requested that their claims be allowed in full as priority administrative expenses according to the terms of the Severance Agreements.

## SEVERANCE AGREEMENTS

The record here has not established that the Severance Agreements (Joint Exhibit A) that were entered into within one month prior to the commencement of the case were assumed, adopted or accepted by the Debtor In Possession. To the extent that the Severance Agreements may be determined to be executory contracts, postpetition assumption in a Chapter 11 case must be approved by the Court. *See* 11 U.S.C. § 365(a). To be approved by the Court, the intention to assume must be clearly declared by the Debtor In Possession or Operating Trustee; and notice of this intention must be given to the necessary parties. *See* Fed. R.Bankr.P. 6006(c); *Bear Valley Mutual Water Co. v. Prestige Point (In re Prestige Point)*, 113 B.R. 643 (Bankr.C.D.Cal.1990), rev'd, 130 B.R. 362 (9th Cir. BAP 1991),

reinstated, 985 F.2d 573 (9th Cir.1993). No Court order approving the assumption, adoption or acceptance of the Severance Agreements has been entered in this case.

The Employees have argued that the Severance Agreements were in fact assumed by the Debtor and approved by the Court on January 14, 1997 (the day after the Chapter 11 Petition was filed) in the "Order Authorizing Debtor and Debtor–In–Possession to Retain, Continue, Assume and Pay Certain Employee Benefits for Past, Present and Future Employees". (Document No. 25). In general, any such agreement sought to be assumed must be clearly specified and is not to be implied from general language. *Bear Valley,* 113 B.R. at 652. Although the Order refers to the Debtor's authority to pay severance obligations, it does not specifically refer to the Severance Agreements, or to any intention to assume any Severance Agreements. The Order authorized the postpetition employment and compensation of employees in general; the Severance Agreements were limited to certain management level employees.

Therefore, the Court finds and concludes that the January 14, 1997 Order authorized the continuation of the Debtor's prepetition severance policy, but did not approve the assumption, adoption or acceptance of the Severance Agreements. The claims under the Severance Agreements are not entitled to allowance as a priority expense of administration.

### SEVERANCE POLICY

The Employees have argued further that if the claims under the Severance Agreements are not allowed, the entire amount of their severance claims should be afforded priority status under the Debtor's prepetition severance policy. The Employees rationale for this argument is that because the severance claims arose after the commencement of the case, the claim is a postpetition administrative expense. However, a debt is not entitled to priority as a cost and expense of administration

simply because the claimants' right to payment arises after the debtor-in-possession has taken some action. *In re Commercial Financial Services, Inc., et al.,* 233 B.R. 885, 891–892 (Bankr.N.D.Okla.1999); *In re Mammoth Mart, Inc.,* 536 F.2d 950, 954 (1st Cir.1976). The severance claims in this case arose prepetition under the Debtor's severance policy, and are contingent upon certain actions by the Debtor In Possession. The contingency occurred after the commencement of the case, and the severance claims under the severance policy are subject to allowance in the Chapter 7 case as prepetition severance claims under Section 507(a)(3)(B), and possibly in part as an expense of administration under Section 507(a)(1).

The Employees believe that, notwithstanding the determinations set out above, at least two cases support their position that the full amount of any severance claim is to be allowed as a priority administrative expense in these circumstances. Upon careful examination however, the Court has determined that neither case is controlling in the circumstances presented in this matter. In *Straus–Duparquet, Inc. v. Local Union No. 3 International Brotherhood of Electrical Workers, AF of L, CIO,* 386 F.2d 649 (2nd Cir.1967), the Circuit Court of Appeals held that, "After the period of eligibility is served, the full severance pay is due whenever termination of employment occurs." *Id.* at 651. The *Straus–Duparquet* opinion was decided under Section 64(a)(1) of Bankruptcy Act, the predecessor to the present Bankruptcy Code. Furthermore, although it is not clearly stated, it appears that the underlying Bankruptcy case was, at the times relevant to the opinion, a Chapter XI business arrangement proceeding.

In the matter being considered here, the case has been converted to a liquidating case under Chapter 7, and the estate appears to be administratively insolvent. This case is being decided under the Bankruptcy Code that became effective on

October 1, 1979. Under the Bankruptcy Code, the Eighth Circuit Court of Appeals has recognized the difficulty of reconciling issues presented by the complicated interface between bankruptcy and non-bankruptcy laws. As is quite common in bankruptcy claims adjudication, one portion of an allowed claim may be treated as an administrative expense for distribution purposes, and another portion may be treated as a priority claim that is entitled to a seventh priority for distribution purposes. *See Missouri Department of Revenue v. L.J. O'Neill Shoe Company (In re L.J. O'Neill Shoe Company)*, 64 F.3d 1146, 1152 (8th Cir.1995). This principle recognizes that the overall scheme of the Bankruptcy Code is to afford a fair, equitable and expeditious distribution of assets under a number of varying circumstances that may be presented to the Bankruptcy Court. More specifically, an allowed severance claim may be bifurcated, such that it is to be paid as an expense of administration only to the extent that a debtor in possession was the recipient of beneficial services. *In re Mammoth Mart, Inc.*, 536 F.2d at 955 n. 4; *In re Commercial Financial Services, Inc.*, 233 B.R. at 892.

The second case cited by the Employees is *In re St. Louis Globe–Democrat, Inc.*, 86 B.R. 606 (Bankr.E.D.Mo.1988). The *Globe–Democrat* opinion is based in part on the *Straus–Duparquet* decision of the Second Circuit. As noted above, the conclusions in the Second Circuit case must be applied in view of more recent decisions such as the Eighth Circuit's opinion in *O'Neill Shoe*, which was entered after the *Globe–Democrat* opinion. Furthermore, the *Globe–Democrat* opinion was based upon an interpretation of the language of a specific document (a collective bargaining agreement) under several sections of the Bankruptcy Code, including 11 U.S.C. § 1113(c) which is not applicable in this case.

## EQUITABLE CONSIDERATIONS

█ Both Parties in this matter have argued that the Court's determination should include the application of equitable principles. It is not disputed that the Employees remained with the Debtor during the Chapter 11 case and provided valuable services while the Debtor struggled to reorganize. It is equally clear however that the Debtor was unable to reorganize and has been liquidated; that no assets will be available for unsecured creditors; that it is very likely that administrative expenses will not be paid in full; and that in addition to these Employees, other entities contributed valuable services and assets to the Debtor's effort to reorganize, perhaps at a level of benefit to the estate that was equal to or greater than that provided by some of these Employees. Therefore, on balance, equity supports the determination that the full amount of any severance claims are not to be allowed as priority expenses of administration.

In the circumstances presented in this case, the Court has determined that the Employees and similarly situated persons performed services that were beneficial to the bankruptcy estate. Based upon the determinations set out herein, that portion of the severance claims that resulted in a direct benefit to the estate may be recognized as an expense of administration. This recognition follows the scheme of the Bankruptcy Code, and is an equitable reconciliation of the interface between Bankruptcy law and the law of contracts. The Chapter 7 Trustee suggested that the amount of the claims could be determined by calculating the number of days worked after the commencement of the case, and the total number of days of eligibility under the severance policy. This allocation appears fair.

## VACATION PAY

A portion of the Employees claims include a request for vacation pay. To the extent that Counsels' arguments concerning severance pay are applicable to the claims for vacation pay, the determinations

set out herein are controlling. If Counsel are unable to resolve any remaining issues as to these eleven employees and similarly situated persons, they are directed to contact the Court to schedule a telephone conference call to determine the need for any additional oral argument.

**IT IS ORDERED** that, as to the eleven employees and similarly situated persons, this matter is concluded; and that the Trustee's objections to the claims of certain Employees and similarly situated persons is sustained as set out herein; and that the severance claims and vacation claims of such creditors are allowed as priority expenses of administration under 11 U.S.C. § 507(a)(1), for the period after commencement of this case until termination and to the extent that their services were a benefit to the estate; and that the Trustee is to calculate such amounts based on the number of days wherein a benefit resulted to the estate; and

That to the extent that a balance remains, such claims are also allowed as priority severance claims under 11 U.S.C. § 507(a)(3)(A) for the period and up to the amount allowed thereunder; and that to the extent that a balance remains thereafter, such claims are allowed as general unsecured claims.

That the hearings on the Trustee's objections to other claims under Omnibus Objection No. 584 will be continued and reset by a separate Order.