**In re RAND ENERGY CO., Debtor.**

**Rand Energy Co., Plaintiff,**

**v.**

**Del Mar Drilling Co., Inc., Defendant.**

**Bankruptcy No. 98–80004–SAF–11.
Adversary No. 00–3323.**

United States Bankruptcy Court,
N.D. Texas,
Dallas Division.

Nov. 7, 2000.

Adam Voyles and Rick Knight, Ware, Snow, Fogel, Jackson & Greene, Houston, TX, for Plaintiff.

Robert Blanc and Nancy J. Brown, Gardere, Wynne, Sewell & Riggs, LLP, Houston, TX, for Defendants.

### *MEMORANDUM OPINION AND ORDER*

STEVEN A. FELSENTHAL, Bankruptcy Judge.

Rand Energy Company, the reorganized debtor, brought this adversary proceeding to obtain a turnover of $471,752.93 plus interest from Del Mar Drilling Company, Inc. Rand filed a motion for summary judgment seeking a turnover judgment. Del Mar opposed Rand's motion and filed a counter motion for summary judgment and for retroactive approval of a setoff and for an award of administrative expenses. In its response to Del Mar's motion for summary judgment, Rand contends, for the first time, that Rand's transfer of $471,752.93 to Del Mar can be avoided as a fraudulent transfer.

The court held a hearing on the motions on September 14, 2000. At the hearing,

the parties contested whether Rand could raise a claim for recovery based on a fraudulent transfer in its response to a summary judgment motion. The court provided Del Mar with an opportunity to address the issue in a post-hearing brief. Del Mar submitted its brief on September 25, 2000, and Rand responded on October 2, 2000.

Actions to recover property of a bankruptcy estate and to determine, avoid, or recover fraudulent transfers constitute core matters over which this court has jurisdiction to enter a final order. 28 U.S.C. §§ 157(b)(2)(E) and (H) and 1334. The allowance or disallowance of an administrative expense and determination of setoff rights constitute core matters over which this court has jurisdiction to enter a final order. 28 U.S.C. §§ 157(b)(2)(A), (B), (O) and 1334.

Under Fed.R.Civ.P. 56(c), made applicable by Bankruptcy Rule 7056, summary judgment may be granted if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that the moving party is entitled to judgment as a matter of law because no genuine issue of material fact exists. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The court must draw inferences in the light most favorable to the party opposing the motion. *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505. The respondent may not rest on the mere allegations or denials in its pleadings but must set forth specific facts showing a genuine issue for trial. *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Except for Del Mar's motion for administrative expenses, the parties agree that this matter may properly be resolved on summary judgment. Indeed, except for facts pertaining to the motion for administrative expenses, there are no genuine issues of material fact concerning the transactions and occurrences which gave rise to this action and are chronicled below.

Rand was an oil and gas exploration and production company. Del Mar was a drilling company. Del Mar and Rand had affiliated and common ownership. Rand contracted with Del Mar for drilling services for a well known as the Dyess Well. By mistake, on October 9, 1998, Rand overpaid Del Mar for invoices for services on the Dyess Well. Rand made the overpayment by two checks on October 9, 1998, on invoices that Rand had previously paid. Rand filed its petition for relief under Chapter 11 of the Bankruptcy Code on October 21, 1998. On the petition date, Rand had overpaid Del Mar $471,752.93 on invoices for the Dyess Well.

Del Mar did not return the overpaid funds to Rand. Del Mar did not advise Rand of the overpayment. Instead Del Mar used the funds to pay six post-petition invoices Del Mar had issued to Rand. Three of the invoices covered pre-petition services by Del Mar for a well known as the Mary Williamson # 1 Well, totaling $161,661.93. Del Mar applied the balance of the overpayment, $310,091.00, to post-petition services for the Mary Williamson # 1 Well.

Rand contends that at the time of the filing of the bankruptcy petition, the overpayment constituted property of the bankruptcy estate requiring that Del Mar turn the funds over to Rand, as the reorganized debtor. 11 U.S.C. § 542(b). Del Mar, in turn, requests that the court annul the automatic stay to permit a set-off to cover the services provided pre-petition at the Mary Williamson # 1 Well, 11 U.S.C. §§ 362 and 553, and that the court allow payment of the post-petition services as an administrative expense. 11 U.S.C. § 503. In turn, Rand contends that the transfers of October 9, 1998, should be avoided as fraudulent transfers, allowing for the recovery as a money judgment. 11 U.S.C. §§ 548 and 550.

**Fraudulent transfer and setoff**

Rand did not allege a claim for recovery of a fraudulent transfer under 11 U.S.C. §§ 548 and 550 in its complaint and Rand did not request summary judgment on a fraudulent transfer claim in its motion. But in its response to Del Mar's motion for summary judgment, Rand contends that it may avoid the October 9, 1998, transfers as fraudulent transfers. Rand argues that there are no genuine issues of material fact concerning the elements of recovery under § 548 and that Rand is entitled to a money judgment under § 550.

Even though not plead in the complaint or raised in its summary judgment motion, Rand contends that the court may grant judgment for Rand on legal principles that differ from those urged by the litigants.

In *Apex Oil Co. v. Archem Co.*, 770 F.2d 1353, 1356 (5th Cir.1985), the Fifth Circuit considered an issue notwithstanding the plaintiff's failure to plead it. The Court cited Wright & Miller for the proposition that:

> [o]nce it is determined that there is no genuine issue as to any material fact and that a party is entitled to the benefit of a judgment as a matter of law, judgment should be entered even though the legal principles relied upon by the court may differ from those that have been urged upon it by the litigants.

*Apex Oil*, 770 F.2d at 1356 n. 3 (*citing* 10A [Charles Alan] Wright, [Arthur R.] Miller & [Mary Kay] Kane, *Federal Practice and Procedure* § 2725, at 112 (1983)).

■ In its post-hearing brief, Del Mar does not contest the application of that holding nor does Del Mar contend that the court may not consider a legal theory of recovery if not plead as a claim for relief. Rather, in its post-hearing brief, Del Mar contests the merits of the avoidance issue. Consequently, although the court considers the procedural issue problematic, the court holds that Del Mar has waived any objection to the court considering the avoidance claim on its merits.

Rand claims that it transferred the $471,752.93 on October 9, 1998, while it was insolvent and that Del Mar did not provide reasonably equivalent value of the transfer. Under § 548,

> (a)(1) [Rand] may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within one year before the date of the filing of the petition, if the debtor voluntarily or involuntarily-
>
> \* \* \* \* \* \*
>
> (B)(i) received less than a reasonably equivalent value in exchange for such transfer or obligation; and
>
> (ii)(I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation...

11 U.S.C. § 548. Value does not include an unperformed promise to furnish support to the debtor. 11 U.S.C. § 548(c)(2)(A).

■ Rand invokes the doctrine of collateral estoppel to establish that Rand was insolvent on October 9, 1998.

> Collateral estoppel is appropriate only if the following four conditions are met. First, the issue under consideration must be identical to the issue litigated in a prior action. Second, the issue must have been fully and vigorously litigated in the prior action. Third, the issue must have been necessary to support the judgment in the prior case. Fourth, there must be no special circumstance that would render preclusion inappropriate or unfair. If these conditions are satisfied, issue preclusion prohibits a party from seeking another determination of the litigated issue in the subsequent action.

*United States v. Shanbaum*, 10 F.3d 305, 311 (5th Cir.1994) (internal citations omitted).

In adversary proceeding no. 99–3262, Rand and Del Mar actually litigated as part of an avoidance action under 11 U.S.C. § 547 the issue of Rand's insolvency for a series of dates from one year before the filing of the bankruptcy petition to the date of the filing. Insolvency is a requisite element for a recovery under § 547 and was therefore necessary to support the judgment in the prior case. In a preference action, for the 90 days prior to the filing of the petition, the Bankruptcy Code presumes insolvency. 11 U.S.C. § 547(f). For the period of one year to the 90 days, the Code does not presume insolvency. The issue of insolvency had been actually litigated and Del Mar had the incentive to fully and vigorously litigate it in the prior action. The parties were the same. The court's findings covered October 9, 1998. The court found Rand to be insolvent. *See Rand Energy Co. v. Del Mar Drilling Co., Inc. (In re Rand Energy Co.)*, no. 99–3262, slip op. at 16 (Bankr.N.D.Tex. Aug. 1, 2000). Del Mar does not point to any circumstances which would render preclusion inappropriate or unfair.[1] Applying the doctrine of collateral estoppel, the court holds that Rand was insolvent on October 9, 1998.

The transfers on October 9, 1998, obviously occurred within one year of the filing of Rand's bankruptcy petition on October 21, 1998.

There is no genuine issue of material fact that Rand transferred its money to Del Mar on October 9, 1998, and, therefore, the court finds that Rand transferred an interest of the debtor in property.

■ There is no genuine issue of material fact that Rand had already paid for Del Mar's services on the Dyess Well when it made the transfers. There is no genuine issue of material fact that the transfers were an overpayment.

Del Mar presents summary judgment evidence that after realizing the error, Del Mar reversed the transaction on its books and established a deposit for Rand, which it applied post-petition to invoices for drilling services on the Mary Williamson # 1 Well. This position concedes that on the day of the transfer, Rand received no property and Rand did not owe for services on the Dyess Well. The transfer did not secure a present or antecedent debt. Only later, post-petition, did Del Mar reverse its books to establish a deposit to pay for drilling services on the other well. The court holds that on the day of transfer Rand received no value for the transfer.

Del Mar likens the transfer to a retainer for services to be rendered by professional persons. The transfer was not a retainer. Del Mar also likens the transfer to an opportunity to receive economic benefit in the future. But Rand made the transfer to pay for services that had already been paid. Rand did not make the transfer as a deposit for drilling services to be provided to the Mary Williamson # 1 Well. Del Mar does not present summary judgment evidence that it would provide services for other wells if Rand overpaid for services to the Dyess Well. Del Mar does not provide summary judgment evidence that it performed services under its contract with Rand for the Mary Williamson # 1 Well because Rand overpaid the Dyess Well. Del Mar contends, instead, that it did not even realize the overpayment was made until after Rand filed its bankruptcy petition. Accordingly, the court finds that there is no genuine issue of material fact of value and that Rand did not receive reasonably equivalent value in exchange for the transfers.

Rand is therefore entitled to summary judgment avoiding the transfers of the $471,752.93 on October 9, 1998, pursuant to 11 U.S.C. § 548(a)(1)(B).

■ Del Mar moves the court, however, to allow a retroactive approval of a setoff. Del Mar may not, however, invoke the

---

1. In so holding, the court notes and preserves for this record Del Mar's position in the prior record concerning evidence and expert opinion regarding insolvency.

setoff doctrine to a fraudulent transfer. In *Mack v. Newton*, 737 F.2d 1343, 1366 (5th Cir.1984), the Fifth Circuit pointed out that "[i]t would defeat the purpose of the Bankruptcy Act's provisions relating to fraudulent transfers to allow [creditors] to offset the value of the property thus transferred to them by the amount of their unsecured claim against [the debtor]." Although developed under the Bankruptcy Act, the rule and its rationale apply under the Bankruptcy Code as well. *See In re J.R. McConnell, Jr.*, 934 F.2d 662, 667 (5th Cir.1991). In *J.R. McConnell*, the Fifth Circuit held that although a creditor could not set off the value of property deemed transferred as a fraudulent conveyance against its claim, it could offset the trustee's, or in this case, the reorganized debtor's, recovery if the creditor's actions satisfy the conditions for the doctrine of recoupment. *Id.* The court cited its opinion in *In re Holford*, 896 F.2d 176, 178 (5th Cir.1990), which provided that "[r]ecoupment allows a defendant to reduce the amount of a plaintiff's claim by asserting a claim against the plaintiff which arose out of the same transaction to arrive at a just and proper liability on the plaintiff's claim." "There need not have been any express contractual right to withhold payments for the transaction to be a recoupment." *In re Holford*, 896 F.2d at 178. Moreover, a recoupment is not subject to the provisions of the automatic stay. *Id.* at 179.

■ Del Mar has not asserted a recoupment right. Del Mar has not offered summary judgment evidence in support of recoupment. Even if the court addressed the issue sua sponte, the court would have to draw inferences from the summary judgment evidence in the light most favorable to Rand. Rand entered separate contracts with Del Mar for drilling services at various wells. Rand overpaid Del Mar for drilling services at the Dyess Well. Del Mar applied the Dyess overpayment to pay for drilling services at the Mary Williamson # 1 Well. The court infers that Del Mar's claim for services for the Mary Williamson Well does not arise out of the same transaction as the services for the Dyess Well. The court therefore has no basis to consider sua sponte the application of the recoupment doctrine.

Based on this analysis, Rand is entitled to a summary judgment avoiding the transfers of $471,752.93 under 11 U.S.C. § 548(a)(1)(B)(i) and (ii)(I) with a money judgment in that amount under 11 U.S.C. § 550.

### Turnover and Setoff

■ For purposes of completeness of adjudication, the court addresses Rand's motion for summary judgment for a turnover and Del Mar's motion for summary judgment for the retroactive application of setoff. The parties agree that at the time of the filing of the bankruptcy petition, Del Mar held the overpayment which Rand erroneously paid. Del Mar's summary judgment evidence suggests that Del Mar took steps post-petition to correct its books. That summary judgment evidence establishes that Rand retained an interest in the overpayment at the time of the bankruptcy petition. That interest became property of the bankruptcy estate, 11 U.S.C. § 541, subject to a turnover under 11 U.S.C. § 542(b). *See United States v. Whiting Pools, Inc.*, 462 U.S. 198, 204–05 n. 8, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983); *In re Leff*, 88 B.R. 105, 107–08 (Bankr. N.D.Tex.1988), *aff'd as modified* 93 B.R. 91 (N.D.Tex.1988), *aff'd* 878 F.2d 1432 (5th Cir.1989) (table).

■ But Del Mar had possession of the funds. Del Mar contends that it could have applied the funds to invoices for services at the Mary Williamson # 1 Well by setoff. However, Del Mar could not effectuate a setoff pursuant to 11 U.S.C. § 553 without obtaining relief from the automatic stay imposed by 11 U.S.C. § 362. The automatic stay may be annulled for cause. 11 U.S.C. § 362(d)(1). Del Mar seeks that relief retroactively.

As discussed above, Del Mar issued three invoices post-petition for services performed pre-petition. Del Mar's motion to annul the stay to allow a setoff comes too late in the case. The provisions of § 362 no longer apply, as the debtor's plan of reorganization has been confirmed and consummated. Upon consummation, the property of the estate has been transferred to reorganized Rand and pre-petition claims discharged with a permanent injunction.

■ However, Del Mar did in fact implement the setoff post-petition but pre-confirmation without obtaining relief from the automatic stay. Actions taken in violation of the automatic stay are voidable, not void, in the Fifth Circuit. *See Sikes v. Global Marine, Inc.*, 881 F.2d 176, 178 (5th Cir.1989). The summary judgment evidence reveals genuine issues of material fact concerning when Del Mar learned of the overpayment and how and why Del Mar acted as it did. Consequently, if an appellate court reversed this court on the fraudulent transfer summary judgment and remanded to this court for further proceedings, the court would set the stay violation issue for trial.

Del Mar also issued three invoices post-petition for post-petition services. Under § 553, Del Mar cannot setoff post-petition invoices with pre-petition overpayments by the debtor. Del Mar recognizes that rule of law. Consequently, for post-petition services, Del Mar moves the court for the allowance of administrative expenses.

### Administrative Expenses

Del Mar provided drilling services to Rand for the Mary Williamson # 1 Well post-petition. Del Mar applied Rand's pre-petition overpayment for the Dyess Well to the invoices for the post-petition services for the Mary Williamson # 1 Well. If Del Mar must return the overpayment, Del Mar contends that the post-petition services would be left unpaid. Del Mar requests that the court award administrative expenses for the services and direct that the overpayment be applied to cover those services.

■ At the hearing to confirm Rand's plan, the court found that Rand would pay all administrative expenses. 11 U.S.C. § 1129(a)(9)(A). By court order, the court set a bar date of December 18, 1999, for motions for administrative expenses. Del Mar did not move for administrative expenses until September 25, 2000. Rand contends that the motion must be denied as untimely. The court may grant relief from a deadline set by court order upon a showing of excusable neglect. Bankruptcy Rule 9006(b)(1); *Pioneer Investment Services Co. v. Brunswick Associates Ltd. Partnership*, 507 U.S. 380, 395–96, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993). There are genuine issues of material fact concerning excusable neglect.

Del Mar provided post-petition services to the Mary Williamson # 1 Well. Rand does not contest that as a general proposition. Rand does, however, question the extent of the services and payment terms and conditions under its contract with Del Mar. Del Mar has not presented summary judgment evidence regarding the contract and the specific services provided post-petition. The court therefore cannot resolve the administrative expenses motion on summary judgment.

■ Rand contends that even if Del Mar establishes the administrative expenses, the expenses must be disallowed if Del Mar fails to pay any judgment under § 550, relying on 11 U.S.C. § 502(d). Section 502(d) provides, as here relevant, that the court "shall disallow any claim" of an entity that does not turn over property of the estate pursuant to 11 U.S.C. § 542 or pay an avoidance judgment pursuant to 11 U.S.C. §§ 548 and 550. Section 502 provides for the allowance of claims or interests. Section 502(d) expressly addresses the disallowance of any "claim." Claims against a bankruptcy estate arise and exist at the time of the filing of the bankruptcy petition. In this motion, Del Mar seeks

recovery for services provided to Rand after the filing of the bankruptcy petition. The Bankruptcy Code treats post-petition services as administrative expenses under 11 U.S.C. § 503, not as pre-petition claims under § 502. *See In re Phones for All, Inc.*, 249 B.R. 426, 428–29 (Bankr.N.D.Tex. 2000); *In re T & T Roofing and Sheet Metal, Inc.*, 156 B.R. 780, 782 (Bankr. N.D.Tex.1993). Accordingly, § 502(d) does not apply to motions for administrative expense under § 503. If Del Mar establishes excusable neglect and a basis for an award of administrative expenses, the court may allow the expenses and provide for payment as part of the final judgment in this adversary proceeding.

### Miscellaneous Matters

Del Mar objects to a supplemental statement regarding summary judgment submitted by Rand. Rand objects to signature pages of a contract submitted late by Del Mar. Because the court has allowed additional briefing on issues going beyond the claim plead in the complaint, the court will consider both items and overrules the objections.

### Orders

Based on the foregoing,

**IT IS ORDERED** that Rand shall have a summary judgment for $471,752.93 pursuant to 11 U.S.C. §§ 548 and 550.

**IT IS FURTHER ORDERED** that Del Mar's motion for summary judgment for setoff is DENIED and Rand shall have a summary judgment denying Del Mar setoff rights.

**IT IS FURTHER ORDERED** that Del Mar's motion for summary judgment for administrative expenses is **DENIED** and the motion for administrative expenses shall be set for trial.