### In re MAMMOTH MART, INC., Debtor.

### Stanley CRAMER et al., Appellants,

### v.

### MAMMOTH MART, INC., Appellee.

### No. 76–1055.

United States Court of Appeals, First Circuit.

June 18, 1976.

---

Samuel Zaharoff, Boston, Mass. and Gary Snerson, Wellesley Hills, Mass., for appellant.

Charles P. Normandin, Boston, Mass., for appellee.

Before COFFIN, Chief Judge, McENTEE and CAMPBELL, Circuit Judges.

COFFIN, Chief Judge.

The sole issue in this appeal is whether a severance pay claim, which is determined by the length of a former employee's service with a bankrupt company and which arises from a discharge during a Chapter XI proceeding, is entitled to priority as a "cost and expense of administration" under § 64(a)(1) of the Bankruptcy Act, 11 U.S.C. § 104(a)(1). Appellants are two former employees of Mammoth Mart, Inc. (Mammoth Mart), a discount department store chain. On June 17, 1974, Mammoth Mart filed a petition to reorganize itself under Chapter XI of the Bankruptcy Act, 11 U.S.C. § 701 *et seq.* Acting as a "debtor in possession" pursuant to a June 28, 1974, court order, Mammoth Mart thereafter terminated its operations in a number of its retail stores and discharged a number of employees, including appellants. Mammoth Mart paid these former employees severance pay of one week's salary for each year of service, up to a maximum of four weeks' salary.

Sometime thereafter, appellants and four other former employees, each of whom had worked for Mammoth Mart for more than four years, filed claims for additional severance pay. They maintained that it had been Mammoth Mart's consistent policy prior to the institution of the Chapter XI proceedings to pay severance pay of one week's salary for each year's employment, subject to no maximum. They contended that they were entitled to recover the difference between the severance pay they would have received under the prior practice and that which they had actually received. The bankruptcy judge allowed these claims over the debtor's protest, but rejected the former employees' further contention that their claims were entitled to first priority as costs or expenses of administering the bankrupt estate. He held, rather, that the claims for additional severance pay were unsecured claims that were entitled to no priority.[1] Appellants appealed the bankruptcy court's ruling of no priority under § 64(a)(1) to the district court,

---

1. Since each employee had received more than $600 in severance pay, it was not possible for any portion of their claims to be given the priority of wages earned within the three months prior to the filing of the petition under § 64(a)(2), 11 U.S.C. § 104(a)(2).

which upheld the bankruptcy judge. This appeal followed. We affirm.

Section 64(a)(1) of the Bankruptcy Act provides in part as follows:

> "The debts to have priority, in advance of the payment of dividends to creditors, and to be paid in full out of bankrupt estates, and the order of payment, shall be (1) the costs and expenses of administration, including the actual and necessary costs and expenses of preserving the estate subsequent to filing the petition . . . ."

Although by its terms this section applies to straight bankruptcies, the Act provides elsewhere that § 64 governs Chapter XI arrangements. 11 U.S.C. § 702.

The priority treatment of severance pay claims arising from discharges occurring during corporate reorganizations under the Bankruptcy Act has varied in the federal courts. When the debtor-in-possession has assumed an employment contract providing that all discharged employees are entitled to their salaries for a brief period following the discharge as severance pay, the apparent consensus in the federal courts is that the employee claims are entitled to § 64(a)(1) priority. *See In re Public Ledger,* 161 F.2d 762, 769–71 (3d Cir. 1947). *Compare McCloskey v. Division of Labor Law Enforcement,* 200 F.2d 402 (9th Cir. 1952); *In re Men's Clothing Code Authority,* 71 F.Supp. 469 (S.D.N.Y.1937) (when discharge on such a contract occurs prior to filing of petition for reorganization, severance pay claims are entitled to priority under § 64(a)(2)). However, in cases like the one at bar, where only those employees who have served for a certain period of time are entitled to severance pay and where the amount thereof varies with the length of the employee's service, the two courts of appeals that have considered the problem have reached different results. One circuit has held that the entire amount of such a claim is entitled to first priority, *Straus-Duparquet, Inc. v. Local No. 3,* 386 F.2d 649 (2d Cir. 1967), whereas a second has concluded that only that portion of the severance pay claim which can be apportioned to services performed after the filing of the arrangement may be afforded § 64(a)(1) treatment. *In re Public Ledger, supra,* 161 F.2d at 771–73. For the reasons stated below, we believe that the only conclusion that is consistent with the objectives of § 64(a)(1), Chapter XI, and the Bankruptcy Act as a whole is that such claims are not entitled to first priority in their entirety. Here, where no portion of appellants' claims can be apportioned to their employment after the arrangement was filed,[2] no portion of the severance pay claims can be entitled to § 64(a)(1) priority.

■ We begin with the premise that the theme of the Bankruptcy Act is "equality of distribution". "If one claimant is to be preferred over others, the purpose should be clear from the statute." *Nathanson v. NLRB,* 344 U.S. 25, 29, 73 S.Ct. 80, 83, 97 L.Ed. 23 (1952); *see Sampsell v. Imperial Paper Corp.,* 313 U.S. 215, 219, 61 S.Ct. 904, 85 L.Ed. 1293 (1941). To give priority to a claimant not clearly entitled thereto is not only inconsistent with the policy of equality of distribution; it dilutes the value of the priority for those creditors Congress intended to prefer.

■ For reasons which will soon be apparent, our consideration of the purposes of § 64(a)(1) must begin with a discussion of the objectives of Chapter XI. The fundamental purpose of Chapter XI is the rehabilitation of the debtor's business. Congress enacted it as an alternative to straight bankruptcy for businesses which might be successfully rehabilitated rather than being subjected to economically wasteful liquidation. *See Nicholas v. United States,* 384 U.S. 678, 684–85, 86 S.Ct. 1674,

---

2. Here, appellants worked only a short period of time after the filing of the arrangement and received severance pay equal to four weeks' salary. There is no question but that whatever portion of their severance pay claims "arose" from transactions with the debtor-in-possession has been paid.

16 L.Ed.2d 853 (1966). Under a Chapter XI arrangement, the debtor, as a juridical entity, ceases to operate the business. Control is transferred to a distinct legal entity, either a "trustee" or a "debtor-in-possession", *see* 11 U.S.C. §§ 738, 742, who will run the business under the supervision of the bankruptcy court. *See Shopmen's Local Union No. 455 v. Kevin Steel Products, Inc.,* 519 F.2d 698, 704 (2d Cir. 1975). To accomplish the rejuvenation of the financially troubled business, the debtor-in-possession is free to terminate unprofitable activities or product lines, to reject burdensome executory contracts, *see* 11 U.S.C. § 713(1), and to take all steps necessary to solve the problems created by the debtor's operation of the business in the past.

The application of § 64(a)(1) to Chapter XI arrangements is primarily a means of implementing the statutory objective of facilitating the rehabilitation of insolvent businesses. Congress recognized that, if a business is to be reorganized, third parties must be willing to provide the necessary goods and services. Since they clearly will not do so unless their claims for payment will be paid ahead of the pre-petition debts and liabilities of the debtor, § 64(a)(1) provides a priority for expenses incurred by the debtor-in-possession in order to maintain, preserve, or rehabilitate the bankrupt estate. Section 64(a)(1), in addition, has been interpreted as providing general protection to claimants that are injured by the debtor-in-possession's operation of the business even though their claims did not arise from transactions that were necessary to preserve or rehabilitate the estate. *See Reading Co. v. Brown,* 391 U.S. 471, 88 S.Ct. 1759, 20 L.Ed.2d 751 (1968) (first priority for tort claims based upon negligence attributable to debtor-in-possession); *Nicholas v. United States, supra,* (first priority for taxes arising from debtor-in-possession's operation of business). Since the debtor-in-possession is a separate legal entity that is carrying on the business principally for the benefit of the pre-filing creditors, the Court has reasoned that fairness requires that any claims incident to the debtor-in-possession's operation of the business be paid before those of creditors for whose benefit the continued operation of the business was allowed. *See Reading Co. v. Brown, supra* at 478, 88 S.Ct. 1759.

For a claim in its entirety to be entitled to first priority under § 64(a)(1), the debt must arise from a transaction with the debtor-in-possession. When the claim is based upon a contract between the debtor and the claimant, the case law teaches that a creditor's right to payment will be afforded first priority only to the extent that the consideration supporting the claimant's right to payment was both supplied to and beneficial to the debtor-in-possession in the operation of the business. When third parties are induced to supply goods or services to the debtor-in-possession pursuant to a contract that has not been rejected, the purposes of § 64(a)(1) plainly require that their claims be afforded priority.[3] It is equally clear that a claimant who fully performs under a contract prior to the filing of the petition will not be entitled to first priority even though his services may have resulted in a direct benefit to the bankrupt estate after the filing. *See Denton & Anderson Co. v. Induction Heating Corp.,* 178 F.2d 841 (2d Cir. 1949) (Frank, J.). Similarly, even when there has technically been performance by the contract creditor during the reorganization period, he will not be entitled to § 64(a)(1) priority if the bankrupt estate was not benefitted in fact therefrom. *Cf. American Anthracite & Bituminous Coal Corp. v. Leonardo Arrivabene, S. A.,* 280 F.2d 119, 124–25 (2d Cir. 1960).

---

3. Where, as here, the claims are based upon a contract which the debtor-in-possession has neither rejected nor expressly affirmed, it is not clear whether the amount of the priority will be determined by the contract price or by the reasonable value of the services that have been provided. *Compare* 8 Collier on Bankruptcy ¶ 3.15[6] (a contract remains in effect until expressly rejected by the Chapter XI debtor-in-possession) *and In re United Cigar Stores,* 69 F.2d 513, 515 (2d Cir. 1934) (right to priority based upon reasonable value of services, not contract price). Given our holding today, we need not take a position on this question.

■ It follows that whether a claim for severance pay based upon an unrejected contract with the debtor and arising from a chapter XI discharge will be entitled to § 64(a)(1) priority will depend upon the extent to which the consideration supporting the claim was supplied during the reorganization. If an employment contract provides that all discharged employees will receive severance pay equal to their salaries for a specified period, the consideration supporting the claim—being an employee in good standing at the time of the discharge—will have been supplied during the arrangement, and the former employee will be entitled to priority. *See In re Public Ledger, supra,* 161 F.2d at 769–71. Here, the situation is quite different. Because the amount of the severance pay claims depends upon the length of employment, the consideration supporting appellants' claims was the services performed for Mammoth Mart over the entire period of each appellant's employment. Since no part of their present claims arise from services performed for the debtor-in-possession, no portion of appellant's claims may receive § 64(a)(1) priority. *See id.* at 771–73.[4]

■ As is implicit in the foregoing discussion, we find the reasoning in support of the contrary result in *Straus-Duparquet, Inc. v. Local No. 3, supra,* unpersuasive. There, the court concluded that severance pay claims similar to appellants' were entitled to first priority "[s]ince severance pay is compensation for termination of employment and since the employment of [the] claimants was terminated as an incident of the administration of the bankrupt's estate." *Id.* at 651. It is established that a debt is not entitled to priority as a cost and expense of administration simply because the claimants' right to payment arises after the debtor-in-possession has taken some action. *See In re Freedomland, Inc.,* 480 F.2d

184, 189 (2d Cir. 1973), *aff'd sub nom. Otte v. United States,* 419 U.S. 43, 56–57, 95 S.Ct. 247, 42 L.Ed.2d 212 (1974); *In re Connecticut Motor Lines, Inc.,* 336 F.2d 96, 99–102 (3d Cir. 1964). It is only when the debtor-in-possession's actions themselves—that is, considered apart from any obligation of the debtor—give rise to a legal liability that the claimant is entitled to the priority of a cost and expense of administration. When the debtor-in-possession commits a tort, *see Reading Co. v. Brown, supra,* or accepts services from a third party without paying for them, the debtor-in-possession itself caused legally cognizable injury, and the resulting claims for compensation are entitled to first priority. Here the wages and four weeks' salary severance pay that the debtor-in-possession paid appellants fully compensated them for the services performed after the petition was filed. The claims for additional severance pay are based entirely upon services performed by appellants to the debtor and, as such, are not entitled to priority.

A final consideration supports our holding today. We strongly doubt that a rule affording former employees first priority for severance pay claims based upon the length of their employment with the debtor would be consistent with § 64(a)(2)'s provision that wages earned during the three months prior to the filing of the petition are, up to a maximum of $600, entitled to second priority. Congress clearly gave careful consideration to the extent to which claims based upon an employee's relationship with the debtor should be given priority vis-a-vis the claims of other creditors. The adoption of appellant's proposed rule would undermine the values promoted by the Congressional scheme. Under it, individuals could, based solely upon their relationship with the debtor, recover "severance pay" in excess of $600 and subject to no

---

4. The result would be different if the debtor-in-possession had, to induce the employees to remain on the job, promised them that, if discharged, they would receive severance pay based on the prior practice. Then the consideration supporting appellants' claims would be the services performed subsequent to the debt-or-in-possession's promise. Here, where the debtor-in-possession made no new promise, but simply permitted the employees to continue their employment, it is bound to pay under the terms of the debtor's contract only to the extent that the debtor-in-possession was the recipient of beneficial services.

maximum. Moreover, they would recover these claims ahead of bona fide wage claims of other former employees (possibly exhausting the bankrupt's assets in doing so) and without prejudice to any wage claims that the severance pay claimants might themselves have. We find it difficult to believe that Congress could have intended § 64(a)(1) to effect such a departure from the policy embodied in § 64(a)(2). *See Nathanson v. NLRB, supra,* 344 U.S. at 28–29, 73 S.Ct. 80.

*Affirmed. Costs for appellee.*