**In re PHONES FOR ALL, INC., Preferred Carrier Services, Inc., Preferred Carrier Services of Virginia, Inc., Debtors.**

Nos. 99–38080–SAF–11, 99–38082–SAF–11, 99–38084–SAF–11.

United States Bankruptcy Court,
N.D. Texas,
Dallas Division.

May 24, 2000.

R. Terry Bell, Craig Gant, Bell, Nunnally & Martin, Dallas, TX, for Isaac Lasky.

J. Mark Chevallier, McGuire, Craddock, et al., Dallas, TX, for Phones for All, Inc., et al.

Warren H. Smith, Donohoe, Jameson & Carroll, Dallas, TX, for Official Unsecured Creditors Committee.

Ken Stohner, Jackson & Walker, Dallas, TX, for Bell Atlantic–Virginia, Inc.

Camille R. McLeod, Bickel & Brewer, Dallas, TX, for Peter Sahagen and Sahagen Consulting Group, LLC.

### MEMORANDUM OPINION

STEVEN A. FELSENTHAL,
Bankruptcy Judge.

Isaac Lasky moves the court for the allowance of an administrative expense under 11 U.S.C. § 503(b)(1) to be paid by the bankruptcy estate of Phones for All, Inc., the Chapter 11 debtor in possession. Phones for All and its Official Committee of Unsecured Creditors oppose the motion. The court conducted an evidentiary hearing on the motion on April 27, 2000.

The determination of an administrative expense to be paid by a bankruptcy estate constitutes a core matter over which this court has jurisdiction to enter a final judgment. 28 U.S.C. §§ 157(b)(2)(A) and 1334. This memorandum opinion contains the court's findings of fact and conclusions of law. Bankruptcy Rules 7052 and 9014.

In this motion, Lasky requests payment of employment severance benefits as an administrative expense. Phones for All and Lasky entered into an employment contract on April 1, 1999. Under the agreement, Lasky agreed to assume the position of Phones for All's executive vice president for a base annual salary of $165,-000 to be paid in equal monthly installments. Phones for All also agreed to pay Lasky a semi-annual bonus and to reimburse his out of pocket expenses. Phones for All and Lasky further agreed that Lasky would receive severance pay in the

event of the termination of his employment without cause, to be paid commencing on the date of his termination and continuing until April 1, 2002. The employment agreement, in section VII D(3), specifically provides:

> **Good Reason or Early Termination by the Company.** In the event of Early Termination or Termination for Good Reasons, Employee shall be entitled to Severance Pay commencing on the date of termination and concluding for the remainder of the Term of the Employment (*see* Section I, April 1, 2002), or twelve (12) months, **whichever is greater** (the "Severance Period") ... the Company shall pay Employee Severance Pay for the Severance Period at the annual rate of Employee's Base Salary plus the prior semi-annual period's bonus, annualized, at the time of termination.

Sahagen Consulting Group, L.L.C., an entity affiliated with the debtor's equity holder, guaranteed the employment agreement.

When Lasky reported for work, Phones for All assigned him the positions of president and chief executive officer. Lasky did not request additional or different compensation because of that assignment. Rather, he worked under and Phones for All paid him pursuant to their employment agreement.

Phones for All filed its petition for relief under Chapter 11 of the Bankruptcy Code on November 18, 1999. Effective December 8, 1999, Phones for All terminated Lasky's employment. The parties agree that Lasky satisfactorily performed his employment obligations and that Phones for All terminated his employment without cause. Phones for All paid Lasky his base salary, both before and after the filing of the bankruptcy petition.

Lasky contends that his employment termination triggered section VII D(3) of the employment contract, entitling him to severance pay of $432,601.65. Because Phones for All terminated his employment post-petition, Lasky claims the severance benefit must be paid as an administrative expense under § 503(b)(1). Phones for All and the creditors' committee contend, however, that the debtor paid Lasky his post-petition wages and that his severance benefits amount to a pre-petition claim against the bankruptcy estate.

Section 503(b)(1) provides that administrative expenses include "the actual, necessary costs and expenses of preserving the estate, including wages, salaries, or commissions for services rendered after the commencement of the case...." Lasky contends that because of his post-petition termination, his severance benefits constitute wages or salary to be paid as an administrative expense. The court must determine whether "wages" or "salaries" under § 503(b)(1) include severance benefits. To answer that issue, the court must read the Bankruptcy Code in its entirety giving meaning to each of its provisions. *United Savings Ass'n of Texas v. Timbers of Inwood Forest Associates, Ltd.*, 484 U.S. 365, 370–72, 108 S.Ct. 626, 98 L.Ed.2d 740 (1988). The court must recognize that where Congress has specifically included a provision in one section of the Code but not another, a court cannot read that provision into the other section. *See Immigration and Naturalization Service v. Cardoza–Fonseca*, 480 U.S. 421, 432, 107 S.Ct. 1207, 94 L.Ed.2d 434 (1987).

Under the priorities of the Bankruptcy Code, 11 U.S.C. § 507, the bankruptcy estate pays administrative expenses under § 503(b) before the payment of pre-petition claims against the estate. 11 U.S.C. § 507(a)(1). Section 507 then assigns priorities to unsecured pre-petition claims. Section 507(a)(3)(A) provides third priority for up to $4,300 for "wages, salaries, or commissions, including vacation, severance, and sick leave pay earned by an individual" within 90 days before the filing of the bankruptcy petition. The Code expressly includes severance pay within wages, salaries and commissions for priori-

ty unsecured wage claims but does not expressly include severance pay within wages, salaries and commissions for administrative expenses. The court may not read the Code to render the express language of § 507(a)(3)(A) superfluous or unnecessary. *Woodfork v. Marine Cooks & Stewards Union,* 642 F.2d 966, 970–71 (5th Cir.1981). Rather, the court must read the Code to give meaning to each provision. To do so, the court infers that Congress intended to include severance pay within wages for unsecured priority wage claims but not for administrative expense wage claims. The court therefore reads the Code to not include severance pay within wages, salaries and commissions entitled to an administrative expense.

This reading fulfills the Code's scheme. The Code classifies claims derived from pre-petition unsecured contracts generally at the same priority, to share pro rata in the bankruptcy estate. Within that class of claims, however, Congress provides priorities based on matters of public policy determined in the legislative process. But, to deliver the payments to those creditors as so classified and prioritized, Congress has determined that the bankruptcy estate must first pay its expenses of administration. Congress has narrowly defined those expenses, as here relevant, by including wages earned post-petition but without pre-petition contractual severance benefits.

Lasky has a claim against the bankruptcy estate under the Code's scheme based on pre-petition rights under the employment agreement. Under the agreement, he obtained a right to the severance pay upon entry of the agreement, conditioned upon a termination without cause. Lasky testified that he negotiated for that benefit as a condition to accepting employment. He further testified that he negotiated the guarantee to assure payment should a termination occur. Thus, upon entry of the contract, Lasky obtained a conditional right to payment. A conditional right to payment constitutes a claim under the Code. 11 U.S.C. § 101(5)(A). As just an-

alyzed, a bankruptcy estate pays claims after payment of administrative expenses. As the Code classifies Lasky's contractual right as a claim against the bankruptcy estate, he may not receive his severance benefits as an administrative expense. *In re T & T Roofing and Sheet Metal, Inc.,* 156 B.R. 780, 782 (Bankr.N.D.Tex.1993).

With the filing of the bankruptcy petition, Phones for All continued to employ Lasky, until terminating his employment on December 8, 1999. After the debtor terminated Lasky's employment and following the filing of this motion, Phones for All moved to reject the employment agreement under 11 U.S.C. § 365. If the employment agreement constitutes an executory contract, if rejected by the debtor, the Code provides that Lasky may file a rejection claim, which may include his severance benefits. 11 U.S.C. §§ 365(a) and 502(g). If the employment agreement does not constitute an executory contract, then, as analyzed above, Lasky held a claim against the estate upon the filing of the petition. For purposes of the priority of his severance claim, the post-petition termination only triggers the pre-petition right to payment, placing the matter squarely within the Code's definition of a claim.

This statutory scheme notwithstanding, courts have recognized that severance benefits derived from pre-petition contracts may, nevertheless, become administrative expense wages. Except for the Second Circuit, those cases involve contractual arrangements where the terminated employee earned his severance pay post-petition or where the debtor gave the severance benefit in lieu of other benefits or rights operating post-petition. *See, e.g., In re Public Ledger, Inc.,* 161 F.2d 762 (3rd Cir.1947); *In re Jeannette Corp.,* 118 B.R. 327 (Bankr.W.D.Pa.1990); *In re Allegheny Int'l, Inc.,* 118 B.R. 276 (Bankr.W.D.Pa. 1990); *In re Miami General Hospital, Inc.,* 89 B.R. 980 (Bankr.S.D.Fla.1988); *In re St. Louis Globe–Democrat, Inc.,* 86 B.R. 606 (Bankr.E.D.Mo.1988). Here, Lasky

earned his severance benefit when he entered the agreement, pre-petition. The Second Circuit has held that severance pay which arises out of the termination of an employee during a bankruptcy is an administrative expense entitled to priority. *In re W.T. Grant Co.*, 620 F.2d 319, 320–21 (2nd Cir.1980); *In re Unishops, Inc.*, 553 F.2d 305, 308 (2nd Cir.1977); *Straus–Duparquet, Inc. v. Local Union No. 3 Int'l Brotherhood of Electrical Workers*, 386 F.2d 649, 651 (2nd Cir.1967). The Court has explained that severance pay is compensation for the hardship which all employees, regardless of their length of service, suffer when they are terminated and that it is therefore earned when the employees are dismissed. But the Second Circuit has further observed: "it appears to be the general rule that when severance pay, like vacation pay, represents compensation for the employee's past services, it is not an administrative expense entitled to priority." *Trustees of Amalgamated Ins. Fund v. McFarlin's, Inc.*, 789 F.2d 98, 104 (2nd Cir.1986).

Under Lasky's contract, he earned his severance benefit when he entered the contract. He receives the severance compensation for that prior act. The act occurred pre-petition. Under the terms of this contract, the Second Circuit would therefore apparently consider the severance pay to have been earned pre-petition and thus not be entitled to administrative expense priority.

 Whether or not severance benefits fit within the statutory requirement of wages or salaries, § 503(b)(1)(A) also requires that to qualify as an administrative expense, the payment of the severance compensation must benefit Phones for All's estate and its creditors. "[A]ctual, necessary costs and expenses of preserving the estate," § 503(b)(1), requires that the expense benefit the estate and its creditors. *NL Indus. Inc. v. GHR Energy Corp.*, 940 F.2d 957, 966 (5th Cir.1991). To meet this test, the expense must arise from a transaction with the debtor and the services supplied must enhance the ability of the debtor's business to function as a going concern. *In re TransAmerican Natural Gas Corp.*, 978 F.2d 1409, 1416 (5th Cir.1992).

Until his termination, Lasky performed his functions as the debtor's president and chief executive officer. That work enhanced the debtor's ability to function as a going concern. But, for that work, Lasky received his base salary of $165,000 annually, paid in equal monthly installments. Lasky produced no evidence that suggests that the debtor induced Lasky to continue working post-petition by offering severance compensation. Phones for All did not commit to nor represent to Lasky that it would assume his employment agreement pursuant to § 365 of the Bankruptcy Code. Lasky did not testify nor did he produce any evidence that suggests that he would not have continued to work, but for his severance benefit. To the contrary, he testified that he insisted on the severance benefit as a condition to employment pre-petition in the first place. Consequently, the debtor had already received the benefit derived by the severance compensation when Lasky commenced his employment, which was pre-petition. Indeed, Lasky obtained a guaranty from an entity affiliated with the debtor's equity holder. As a result, Lasky did not rely on the bankruptcy estate, post-petition, to pay him severance compensation in the event of termination. Under these facts and circumstances, the severance provision of his employment agreement did not actually impact his decision to continue to work post-petition.

Payment of a severance benefit of $432,-601.65 does not further benefit nor add to the benefit derived from Lasky's services post-petition and compensated by his base salary. Even if the severance compensation may be construed as wages or salary under § 503, Lasky has failed to establish a benefit to the estate and its creditors from the severance compensation not already obtained from and compensated by his base salary.

Like other unsecured creditors in this case, Lasky may assert his pre-petition contractual right to payment and may be able to include a portion as an employee priority claim to be paid from the bankruptcy estate with the other unsecured creditors. Like many of those creditors who have provided goods and services to Phones for All post-petition, Lasky has been compensated for the actual services rendered post-petition. More, he may not receive.

■ For purposes of completeness, should an appellate court conclude that Lasky's severance compensation should be included as administrative expense wages either as a matter of statutory construction or based on the facts of this case and further conclude that the severance compensation benefits the estate, then this court would find that the severance pay should be prorated to the portion attributable to work performed for Phones for All as a debtor in possession. *See, e.g., In re Jartran, Inc.*, 732 F.2d 584 (7th Cir.1984); *In re Health Maintenance Foundation*, 680 F.2d 619 (9th Cir.1982); *In re Mammoth Mart, Inc.*, 536 F.2d 950 (1st Cir. 1976); *In re Public Ledger*, 161 F.2d 762 (3rd Cir.1947). Lasky worked for the debtor in possession from November 18, 1999, to December 8, 1999. Payment of his entire contractual benefit of $432,-601.65 is completely out of proportion to the benefits derived in that limited period of time of service, post-petition. Indeed, payment of the entire sum would harm the creditors by depleting beyond a pro rata assessment their distributions from the estate. Meanwhile, Lasky enjoys the benefit of a third party guarantee of his severance compensation. Consequently, the court would pro-rate the severance compensation for the period of time he actually worked for the debtor in possession. Ac-

cordingly, for purposes of complete findings, the court would award, on a prorated basis, $10,776.57 as an administrative expense for severance compensation for Lasky.[1]

Based on the foregoing, the court will enter an order denying the motion for the allowance and payment of an administrative expense.

---

1. The calculation for this pro-rated amount is as follows:

 December 9, 1999 to March 31, 2000 = 113 days
 April 1, 2000 to March 31, 2001 = 365 days
 April 1, 2001 to March 31, 2002 = 365 days
 TOTAL = 843 days
 $432,601.65 divided by 843 days = $513.17 per diem
 November 18, 1999 to December 8, 1999 = 21 days (inclusive)
 $513.17 per diem ≤ 21 days = $10,776.57