**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**APR 24 2001**

**PATRICK FISHER**
**Clerk**

PUBLISH

### UNITED STATES COURT OF APPEALS

### TENTH CIRCUIT

---

In re:  COMMERCIAL FINANCIAL
SERVICES, INC.,

   Debtor.

---

JOHN BACHMAN; BRUCE PHELPS,

   Appellants,

v.                                                         No. 00-5108

COMMERCIAL FINANCIAL
SERVICES, INC.,

   Appellee.

---

### APPEAL FROM THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF OKLAHOMA
### (D.C. No. 99-CV-390-H)

---

Submitted on the briefs:

Greggory T. Colpitts of Magee & Colpitts, Tulsa, Oklahoma, for Appellants.

Larry M. Wolfson and Jerry L. Switzer, Jr. of Jenner & Block, Chicago, Illinois,
and Neal Tomlins and Ronald E. Goins of Tomlins & Goins, Tulsa, Oklahoma, for
Appellee.

---

Before **HENRY** , **BRISCOE** , and **MURPHY** , Circuit Judges.

**MURPHY** , Circuit Judge.

This case requires us to determine whether lump sum cash payments due upon termination and promised to appellants when they executed employment contracts with Commercial Financial Services, Inc., (CFS), were entitled to priority as administrative expenses in CFS's eventual bankruptcy. After reviewing the briefs of the parties, the relevant case law, and the opinions of the bankruptcy court and the district court, we affirm. [1]

Appellants Bachman and Phelps entered into employment contracts with CFS in which both employees were promised lump sum cash payments upon termination by CFS prior to the expiration of the contracts unless such termination was for cause. The lump sum payments equaled appellants' annual base salaries of $120,000 and $150,000, respectively. Before appellants' contracts expired, CFS filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code and assumed the role of debtor in possession. Appellants continued to work for the debtor in possession, but each was terminated, without

---

[1]     After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal.   *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).   The case is therefore ordered submitted without oral argument.

-2-

cause, within a month after the filing. Both appellants were paid full salaries for the post-petition period in which they worked.

After the terminations and with the approval of the bankruptcy court pursuant to 11 U.S.C. § 365(a), the debtor in possession rejected appellants' employment contracts. Appellants then filed a motion in the bankruptcy court seeking an order classifying their lump sum payments as priority administrative claims under 11 U.S.C. § 503(b)(1)(A).

11 U.S.C. § 503(b)(1)(A) provides:

(b) After notice and a hearing, there shall be allowed administrative expenses . . . including--

> (1)(a)the actual, necessary costs and expenses of preserving the estate including wages, salaries, or commissions for services rendered after the commencement of the case.

Administrative expenses allowed under § 503(b) are entitled to priority pursuant to 11 U.S.C. § 507(a)(1) and § 726(a)(1). The policy behind such priority is to encourage creditors to extend credit and supply debtors with goods and services post-petition in order to increase the likelihood that a successful reorganization will occur. *See In re Jartran, Inc.*, 732 F.2d 584, 587-88 (7th Cir. 1984). Creditors are unlikely to do this unless they are promised priority. Such priority does no injustice to pre-petition creditors, because they will presumably benefit more from a reorganized debtor than from one forced into liquidation. *Id.*

-3-

at 586. Such priorities are strictly construed, however, "[b]ecause the presumption in bankruptcy cases is that the debtor's limited resources will be equally distributed among his creditors." *Isaac v. Temex Energy, Inc. (In re Amarex, Inc.* ), 853 F.2d 1526, 1530 (10th Cir. 1988) (quotation omitted). Administrative priority must have a clear statutory purpose; appellants can prevail only by demonstrating that their claims "comport with the language and underlying purposes of § 503." *Jartran, Inc.* , 732 F.2d at 586.

In a thorough and well-reasoned opinion, the bankruptcy court held that the lump sum payments were not "necessary costs and expenses of preserving the estate" under 11 U.S.C. § 503(b)(1)(A) nor could they be compensation for appellants' post-petition services. Applying the First Circuit test articulated in *Cramer v. Mammoth Mart, Inc. (In re Mammoth Mart, Inc.)* , 536 F.2d 950, 954 (1st Cir. 1976), and endorsed by this circuit in *Amarex* , 853 F.2d at 1530, the bankruptcy court further determined that appellants' claims neither arose from a transaction with the debtor in possession nor benefitted the debtor in possession. The bankruptcy court held that the claims, therefore, were not entitled to priority as administrative expenses. The district court affirmed, and appellants appeal.

This court considered a situation similar to the present one in *Amarex.* There, the claimant was party to an employment contract with Amarex providing for a one-year $10,000 bonus which could be annualized over the first year.

During the claimant's first year of employment, Amarex was placed in involuntary bankruptcy. After working for the debtor in possession for more than a year after the filing, the claimant sought classification of the unpaid bonus as an administrative expense.

In rejecting the district court's conclusion that the entire bonus was entitled to priority because it was earned post-petition, this court adopted the analysis of the First Circuit in *Mammoth Mart*, 536 F.2d 950.

> [A]n expense is administrative only if it arises out of a transaction between the creditor and the bankrupt's trustee or debtor in possession (citations omitted) and only to the extent that the consideration supporting the claimant's right to payment was both supplied to and beneficial to the debtor-in-possession in the operation of the business. A debt is not entitled to priority simply because the right to payment arises after the debtor in possession has begun managing the estate.

*Amarex*, 853 F.2d at 1530 (quotations omitted). [2] Largely because the bonus at issue in *Amarex* was "guaranteed" and "annualized" and because the claimant could draw a monthly advance against it, we agreed with the bankruptcy court that the bonus was part of the claimant's "agreed salary, and was earned day by day during that first year." *Id.* at 1531. Priority was accorded only that portion of the bonus earned post-petition because "[o]nly those services were 'consideration supporting the claimant's [Isaac's] right to payment . . . both supplied to and beneficial to the debtor-in-possession in the operation of the business.'" *Id.* at 1532 (quoting *Mammoth Mart*, 536 F.2d at 954). *Amarex* is not limited to cases involving employee bonuses and sets out this circuit's definitive procedure for determining all administrative expense claims, including the severance-pay-type claims presented here. *General Am. Transp. Corp. v. Martin (In re Mid Region Petroleum, Inc.)*, 1 F.3d 1130, 1133 n.5 (10th Cir. 1993).

---

[2] Appellants in the bankruptcy court relied on language in *Amarex* which quoted *Trustees of Amalgamated Insurance Fund v. McFarlin's, Inc.*, 789 F.2d 98 (2d Cir. 1986), to argue that, because severance pay is compensation for the hardship employees face when they are terminated, severance pay is earned upon dismissal. *Amarex*, 853 F.2d at 1530-31. That statement in *McFarlin's* was meant to summarize Second Circuit case law on the issue of severance pay. The reference to that statement, as dicta, in *Amarex* was part of this court's effort to illustrate the disagreement among the circuits regarding the treatment of severance pay as an administrative expense. The ultimate decision in *Amarex* resulted from the application of *Mammoth Mart*, a case rejecting the Second Circuit approach to severance pay claims in bankruptcy. Appellants' suggestion that this circuit finds all severance pay claims entitled to administrative priority rests on a misreading of *Amarex.*

Applying the *Amarex/Mammoth Mart* test to the facts of this case, we agree with the bankruptcy court and the district court that these claims for lump sum termination payments should not be accorded priority as administrative expenses. In order to attain such status, the claims must have arisen from a transaction with the debtor in possession. *Amarex*, 853 F.2d at 1530. Appellant's argue that they had a transactional relationship with the debtor in possession because the debtor in possession continued to employ them post-petition and paid them for their work. This is insufficient to establish a transaction with the debtor in possession for administrative priority purposes.

"It is only when the debtor-in-possession's actions themselves -- that is, considered apart from any obligation of the debtor -- give rise to a legal liability that the claimant is entitled to the priority of a cost and expense of administration." *Mammoth Mart*, 536 F.2d at 955. It is crucial that the claimant's performance be induced by the debtor in possession. *Jartran, Inc.*, 732 F.2d at 587.

Here, there is no evidence that the debtor in possession assumed the employment contracts or entered into new post-petition contracts with appellants. In fact, shortly after the terminations, the debtor in possession rejected the employment contracts. The debtor in possession did nothing to give rise to legal liability for payment of the lump sum amounts. Nor did the debtor in possession

induce appellants' performance by promising to pay them the lump sum amounts if they would continue to work post-petition.

Further, it is not determinative that payment of the lump sum was contingent upon appellants' termination, an event which occurred post-petition. In determining administrative priority, courts look to "when the acts giving rise to a liability took place, not when they accrued." *Pension Benefit Guar. Corp. v. Sunarhauserman, Inc. (In re Sunarhauserman, Inc.)*, 126 F.3d 811, 818 (6th Cir. 1997); *see also Pension Benefit Guar. Corp. v. Skeen (In re Bayly Corp.)*, 163 F.3d 1205, 1208-09 (10th Cir. 1998). Here, in order for appellants to prevail, the liability must arise post-petition; it is not enough that the right to payment arose after the debtor in possession assumed control. *Amarex*, 853 F.2d at 1530. The liability arose at the time the contracts were executed; only the right to payment arose upon appellants' termination. Appellants have not shown that their claims arose from a transaction with the debtor in possession and thus have not met the first prong of the *Amarex/Mammoth Mart* test.

The second requirement for administrative priority is that "the consideration supporting the claimant's right to payment was both supplied to and beneficial to the debtor-in-possession in the operation of the business." *Id.* (quotation omitted). Appellants' claims also fail on this front.

Appellants argue that they satisfy this requirement because, by working for the debtor in possession for some three weeks after the filing, they provided services which benefitted the estate. This showing, however, is insufficient to establish that the consideration supporting the right to payment of the lump sum "was both supplied to and beneficial to the debtor-in-possession in the operation of the business." *Id.* (quotation omitted).

With regard to the requirement that the consideration must be supplied to the debtor in possession, there is nothing in the record to suggest that appellants' work for the debtor in possession for three weeks post-petition was consideration for the large lump sum payments at issue here. Indeed, the consideration for the lump sums was the agreement by appellants, supplied pre-petition, that they would forego other employment opportunities and sign on with CFS as employees. That consideration included obligating themselves to work for CFS for two years and to move their residences from other states to Tulsa, Oklahoma.

The three weeks of post-petition work was not consideration for the lump sum payments; that work was consideration for the payment of salaries which appellants received in full. As we stated in *Amarex*:

> [T]he right to priority does not necessarily depend on the fact that the obligation to pay the bonus did not arise until after the commencement of bankruptcy proceedings. As the cases indicate, what is crucial is what *consideration* supports the bonus, and whether such consideration, or a portion of it, was pre-petition services.

*Amarex* , 853 F.2d at 1531.

The consideration supporting appellants' right to the lump sum cash payments was the mutual promises contained in their respective employment contracts. That consideration was rendered entirely pre-petition and cannot support appellants' claim for administrative priority. No part of the consideration for the lump sum payments was supplied to the debtor in possession.

Further, there is no evidence that the consideration for the lump sum payments was beneficial to the debtor in possession in the operation of the business. In fact, four days after appellants were terminated, the debtor in possession moved the bankruptcy court for permission to reject the employment contracts and eventually did so. Thus, appellants' agreement to forego other employment opportunities to work for CFS in return for the promise of the lump sum payments was of no benefit to the estate. The lump sum payments were not actual, necessary costs and expenses of preserving the estate.      *See* 11 U.S.C. § 503(b)(1)(A).

Appellants cite   *Teamsters Local No. 310 v. Ingrum (In re Tucson Yellow Cab Co.)* , 789 F.2d 701, 704 (9th Cir. 1986), in which the Ninth Circuit held that severance pay in lieu of notice was entitled to administrative priority. That case, driven largely by equitable concerns, is distinguishable. In      *Tucson Yellow Cab* , a collective bargaining agreement between the taxi drivers and the company

provided for two weeks notice prior to termination or severance pay in lieu of notice. The clear intent of the parties was to compensate the drivers for at least two weeks before termination, either by providing them with two weeks notice, after which the drivers would presumably work two more weeks and be paid, or to pay them two weeks severance pay and terminate them immediately. The pay in lieu of notice was clearly a component of compensation. Here, in contrast, appellants were paid their normal wages for the three weeks they worked post-petition. The lump sum cash payments were not "wages, salaries, or commissions for services rendered after the commencement of the case."    *See* 11 U.S.C. § 503(b)(1)(A).

Here, as in *Mammoth Mart*, the salaries paid appellants fully compensated them for their post-petition services to the debtor in possession. "The claims for [the lump sum payments] are based entirely upon [consideration supplied] by appellants to the debtor, and, as such, are not entitled to priority."    *Mammoth Mart*, 536 F.2d at 955.

The judgment of the United States District Court for the Northern District of Oklahoma is AFFIRMED.