**In re ACOUSTISEAL, INC., Debtor.**

**No. 02–44807–fwk.**

United States Bankruptcy Court, W.D. Missouri.

Jan. 24, 2003.

Cynthia Dillard Press, William Jeffrey Maloney, Bryan Cave, LLP, Kansas City, MO, Frank E. Lipsman, Morton, Hubbard, Ruzicka & Kreamer, Olathe, KS, for Debtor.

Bruce E. Strauss, Kansas City, MO, trustee.

Mark A. Shaiken, Stinson, Mag & Fizzell, PC, Kansas City, MO, for trustee.

Jerry L. Phillips, Office of U.S. Trustee, Kansas City, MO, Mark A. Shaiken, Stinson, Mag & Fizzell, PC, Kansas City, MO, for U.S. Trustee.

Robert B. Weiss, Honigman, Miller, Schwartz & Cohn, Detroit, MI, for General Motors Corp.

Stephen B. Sutton, Lathrop & Gage, Kansas City, MO, for Nitto Missouri Acquisition Corp.

Lisa A. Epps, Spencer, Fane, Britt & Browne, LLP, Kansas City, MO, for Sika Corp.

Lori O'Keefe Locke, Mark A. Shaiken, Stinson, Mag & Fizzell, PC, Kansas City, MO, for The Official Unsecured Creditors Committee.

## MEMORANDUM OPINION

ARTHUR B. FEDERMAN, Chief Judge.

Fourteen former salaried employees of Debtor AcoustiSeal, Inc., have filed a Mo-

tion for Severance Pay as Administrative Expense, as well as two amendments to such motion. Both the Debtor and the Official Unsecured Creditors Committee oppose the employees' motion. This action was heard on December 20, 2002. On January 8, 2003, the case was converted to Chapter 7 and Bruce Strauss was appointed trustee. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) over which the Court has jurisdiction pursuant to 28 U.S.C. §§ 1334, 157(a), and 157(b)(1). The following constitutes my Findings of Fact and Conclusions of Law in accordance with Rule 52 of the Federal Rules of Civil Procedure as made applicable to this proceeding by Rule 7052 of the Federal Rules of Bankruptcy Procedure.

## DECISION

For the reasons set forth below, I will grant the employees' request for claims for severance but will, for the most part, deny their request that these claims be treated as administrative expenses under 11 U.S.C. § 503(b). The allowed claims for severance will be entitled to administrative expense treatment to the extent they accrued postpetition and to priority treatment as unsecured, prepetition claims to the extent they accrued within 90 days prepetition and are allowable under 11 U.S.C. § 507(a)(3)(A). The balance of the allowed severance claims will be treated as unsecured claims without priority.

## FACTUAL BACKGROUND

AcoustiSeal, Inc., filed its voluntary Chapter 11 petition for reorganization relief on September 4, 2002, and continued to operate its business and manage its properties as a debtor-in-possession until the case was converted to Chapter 7 on January 8, 2003. As part of a reduction in work force which it made in its attempt to reorganize, AcoustiSeal terminated twelve salaried employees from their respective positions within a week after the bankruptcy petition was filed and terminated another salaried employee on October 2, 2002, about a month after the filing. One of the fourteen employees bringing this motion, Judith A. Samayoa, resigned from her position shortly prior to the filing of the bankruptcy petition.[1]

In this motion, the employees seek various amounts of severance pay in accordance with what they assert to be the Debtor's severance policy and practice. They also request that their claims for severance pay be given administrative expense, or first priority, treatment in this bankruptcy case.[2] To summarize, the motion sets forth three categories of employees seeking varying severance packages in accordance with the company's policy. The first category, the Executive Salaried Employees, seek the equivalent of one year's annual salary, payment for all unused vacation, continuance of their health insurance for the period of the severance, a buyout of any remaining term of the executive's automobile lease relating to their company car, and pension payouts.[3] The second category of employees, the Supervisory Salaried Employees, seek the equivalent of two weeks salary plus the equivalent of one week of salary for each year of service, payment for unused vacation, continuation of health insurance for the period of the severance payments, and pension payouts.[4] The third category, the Salaried Employees, seek the equivalent of two weeks salary plus the equivalent of

1. Docs. # 111, 275.

2. 11 U.S.C. § 507(a)(1); 11 U.S.C. § 503(b).

3. Doc. # 275.

4. *Id.*

two weeks salary for each year of service, payment of unused vacation, continuation of their health insurance for the period of the severance payments, and pension amounts.[5] Particularly, the individual employees are:

*The Executive Salaried Employees.* At the time the bankruptcy petition was filed, Steven H. Arthur was AcoustiSeal's Vice–President of Sales and Marketing, earning an annual salary in the amount of $156,000. He was terminated from his position effective September 11, 2002. He seeks a severance package totaling $171,717.00 plus an undetermined pension amount.[6]

Douglas O. Scott was AcoustiSeal's Vice–President of Operations and Quality Control, earning an annual salary in the amount of $125,000. He was terminated from his position on September 9, 2002. He seeks a severance package totaling $139,082.72 plus an undetermined pension amount.[7]

Louis A. Moore was AcoustiSeal's Director of Materials Technology, earning $113,000. He was terminated effective September 11, 2002. He seeks a severance package totaling $127,025.24 plus an undetermined pension amount.[8]

George M. Grimes was AcoustiSeal's Plant Controller. He earned an annual salary of $67,500 and was terminated on October 2, 2002. He seeks a severance package totaling $74,742.72 plus an undetermined pension amount.[9]

Judith A. Samayoa was AcoustiSeal's Chief Financial Officer, earning an annual salary of $141,000. She submitted her resignation which was effective September 3, 2002, at 9:00 p.m., the evening before the bankruptcy petition was filed. She seeks a severance package totaling $151,323.08.[10]

*The Supervisory Salaried Employees.* William C. Bland was AcoustiSeal's Material Supervisor, earning $29,000 per year. He was terminated on September 11, 2002. He seeks a severance package totaling $10,525.95 plus an undetermined pension amount.[11]

Clifton O. Lee earned $42,000 per year and was terminated September 11, 2002. He seeks a severance package totaling $12,267.00 plus an undetermined pension amount.[12]

Lena M. Moore earned $40,000 per year and was terminated September 11, 2002. She seeks a severance package totaling $14,615.37 plus an undetermined pension amount.[13]

Danny L. Robertson earned $40,000 per year and was terminated September 11, 2002. He seeks a severance package totaling $10,769.22 plus an undetermined pension amount.[14]

Wilber Terry earned $42,500 per year and was terminated September 11, 2002. He seeks a severance package totaling $19,282.44 plus an undetermined pension amount.[15]

John R. Louis earned $42,000 per year and was terminated September 11, 2002.

5. *Id.*

6. *Id.*

7. *Id.*

8. *Id.*

9. *Id.*

10. *Id.;* Respondent's Exhibit A.

11. *Id.*

12. *Id.*

13. *Id.*

14. *Id.*

15. *Id.*

He seeks a severance package totaling $6,169.84 plus an undetermined pension amount and sales commissions.[16]

*The Salaried Employees.* Fred V. Hill earned an annual salary of $65,400 and was terminated September 11, 2002. He seeks a severance package totaling $15,092.28 plus an undetermined pension amount.[17]

Pamela S. Jett earned $32,000 per year and was terminated September 11, 2002. She seeks a severance package totaling $9,846.087 plus an undetermined pension amount.[18]

Finally, Taylor Day earned an annual salary of $51,000, was terminated September 11, 2002, and seeks a severance package totaling $6,790.04 plus an undetermined pension amount.[19]

All together, these claims total nearly $770,000, not including the pension amounts which have yet to be determined.

The Debtor has filed an Answer and Accompanying Memorandum in Opposition in which it objects to the employees' motion on two primary grounds: first, the Debtor asserts that no enforceable severance policy or contract exists in the first place, and second, if there was an enforceable policy and the employees are entitled to the claims for severance, such claims are not entitled to administrative expense priority.[20] The Official Unsecured Creditors Committee has joined in the Debtor's Answer opposing the employees' Motion.[21]

## DISCUSSION

*The Employees' Claims for Severance*

■ The first issue I must address is the question of whether an enforceable severance policy existed in the first place. The parties agree that no current written policy or contract exists between Acousti-Seal and the employees. Rather, the employees assert that the company's previous written policy, along with AcoustiSeal's continued practice and custom in paying severance packages, amounts to an enforceable policy on which they relied to their detriment.[22]

At the hearing, several of the employees testified regarding the history of the company now known as AcoustiSeal, Inc., which involved a series of changes in ownership of the company and which culminated in an asset sale on June 15, 2000, transferring the company assets to AcoustiSeal. According to the employees' testimony, AcoustiSeal's predecessors had a written severance policy which, at least in some cases, was expressed and explained to them during the interview and negotiation processes of employment. For many years, the written policy was available for the employees to view and it was commonly known by the employees that Acousti-Seal and its predecessors adhered to the policy whenever salaried employees were terminated. Further, according to the Asset Purchase Agreement under which AcoustiSeal purchased the company's assets, AcoustiSeal was obligated to maintain its predecessors' severance policies for a period of eighteen months after the June 15, 2000 closing of the asset purchase. Thus, under the terms of the Asset Purchase Agreement, this formal obligation to maintain the severance policy terminated on December 15, 2001.

16. *Id.*

17. *Id.*

18. *Id.*

19. *Id.*

20. Doc. # 118.

21. Doc. # 120.

22. *See* Docs. # 111, 304.

However, the employees assert that, although the written agreement to continue the severance policy terminated on December 15, 2001, AcoustiSeal never notified any of the employees that it was no longer obligated to provide severance packages upon termination of employment. In fact, they argue, it continued to routinely award severance packages to employees who were terminated after December 15, 2001, in conformity with what had been its practice in the past. Specifically, AcoustiSeal made a reduction in force in February of 2002, in which it terminated four salaried employees. Even though the formal obligation to pay severance had expired under the terms of the Asset Purchase Agreement, each of those employees received severance packages in conformance with the company's prior policy.[23]

In sum, the employees contend that the company's failure to advise them of the expiration of the written contractual severance policy, along with the company's continued and consistent practice of paying the severance packages even after the contractual obligation to do so terminated, created an expectation of severance, on which they relied, and that this constitutes an enforceable policy under which they are now entitled to severance pay.

I agree. The employees testified that AcoustiSeal made representations (if not promises) of severance in accordance with the official policy of AcoustiSeal's predecessors. And, although the official written policy terminated on December 15, 2001, the uncontroverted testimony was that no one notified the employees of the change, AcoustiSeal consistently continued to practice the policy, and the employees relied upon the existence of the policy. Therefore, the employees who were terminated post-petition are entitled to claims for severance in accordance with the terms of the severance policy as practiced historically by AcoustiSeal and its predecessors.

 The Debtor asserts that, even if the employees who were terminated are entitled to claims for severance, Ms. Samayoa is not so entitled because she voluntarily resigned prior to the filing of bankruptcy petition, rather than being discharged from her position. Ms. Samayoa submitted a formal resignation which was effective September 3, 2002, at 9:00 p.m.,[24] but she asserts that her resignation was "forced" and is therefore tantamount to a discharge from employment. Ms. Samayoa testified that she resigned because she had been advised that her position as Chief Financial Officer had been filled by another person and because she did not want to assume any personal risk associated with post-bankruptcy documents that someone else might prepare. Under these circumstances, I find that Ms. Samayoa's resignation was tantamount to a termination and that she is therefore entitled to a claim for severance under the terms of the severance policy practiced by AcoustiSeal. However, as discussed more fully below, because her termination occurred prior to the bankruptcy filing, her claim for severance is a pre-petition claim.

*Administrative Expense Priority*

Having determined that the employees are entitled to claims for severance, the next question is whether and to what extent those claims are entitled to administrative expense priority under 11 U.S.C. § 503(b).

 Administrative expenses, as defined by 11 U.S.C. § 503(b), are given first payment priority under 11 U.S.C.

---

**23.** Plaintiff's Exhibit 1.

**24.** Respondent's Exhibit A.

§ 507(a)(1). Section 503(b)(1)(A) defines administrative expenses to include "the actual, necessary costs and expenses of preserving the estate, including wages, salaries, or commissions for services rendered after the commencement of the case." [25] The policy behind such priority is to encourage creditors to extend credit and supply debtors with goods and services post-petition in order to increase the likelihood that a successful reorganization will occur. [26] Such priorities are strictly construed, however, "[b]ecause the presumption in bankruptcy cases is that the debtor's limited resources will be equally distributed among his creditors." [27] "Administrative priority must have a clear statutory purpose; appellants can prevail only by demonstrating that their claims 'comport with the language and underlying purposes of § 503.'" [28] The employees assert that, because they were terminated postpetition, their severance benefits constitute wages or salary to be paid as an administrative expense under this provision.

■ One Court, the Second Circuit, has a line of cases holding that if employees are terminated postpetition, their entire severance package is an expense of administration. [29] This holding has been rejected most recently by the Fifth Circuit, [30] and previously by the Tenth Circuit, [31] the First Circuit, [32] and the Third Circuit. [33] I similarly reject the argument that the entire amount of these severance claims should be treated as an administrative expense.

The Tenth Circuit case, *Commercial Financial Services,* involved two employees who had entered into pre-petition contracts entitling them to lump sum cash payments equaling their annual base salaries in the event they were terminated, without cause, prior to the expiration of their respective contracts. Both employees continued to work for the debtor-in-possession but were terminated without cause within a month after the bankruptcy filing. Both employees had been paid their full regular salaries for the postpetition period in which they worked. They asked that the lump sum payments due them be treated as administrative expenses under § 503(b)(1)(A). [34] The Tenth Circuit affirmed the Bankruptcy Court's denial of their requests, determining that, because the contracts had been entered prepetition and the debtor-in-possession had not assumed the contracts or entered into new postpetition contracts, the claims

**25.** 11 U.S.C. § 503(b)(1)(A).

**26.** *In re Commercial Financial Servs., Inc.,* 246 F.3d 1291, 1293 (10th Cir.2001) (*citing In re Jartran, Inc.,* 732 F.2d 584, 587–88 (7th Cir.1984)).

**27.** *Id.* (*quoting Isaac v. Temex Energy, Inc. (In re Amarex, Inc.),* 853 F.2d 1526, 1530 (10th Cir.1988)).

**28.** *Id.* (*citing Jartran, Inc.,* 732 F.2d at 586).

**29.** *In re Straus–Duparquet, Inc. v. Local Union No. 3,* 386 F.2d 649 (2nd Cir.1967) (holding, under the Bankruptcy Act, that the entire portion of the employees' severance pay claims is entitled to first priority as costs and expenses of administration); *see also In re*

*W.T. Grant Co.,* 620 F.2d 319, 321 (2nd Cir. 1980) (reaffirming its holding in *Straus–Duparquet*).

**30.** *In re Phones for All, Inc.,* 288 F.3d 730 (5th Cir.2002); *In re Phones for All, Inc.,* 262 B.R. 914 (N.D.Tex.2001); *In re Phones for All, Inc.,* 249 B.R. 426 (Bankr.N.D.Tex.2000).

**31.** *Commercial Financial Servs.,* 246 F.3d 1291.

**32.** *In re Mammoth Mart, Inc.,* 536 F.2d 950 (1st Cir.1976).

**33.** *In re Public Ledger, Inc.,* 161 F.2d 762 (3rd Cir.1947).

**34.** 246 F.3d at 1292–93.

for lump sum compensation did not arise from a transaction with the debtor-in-possession as required by § 503(b)(1)(A) and should, therefore, not be accorded priority as administrative expenses.[35] In addition, the Tenth Circuit held, the few weeks of service provided by the employees postpetition did not constitute consideration for the large lump sum payments requested; rather, their postpetition service was consideration for the payment of salaries which the employees received in full.[36] Finally, the Tenth Circuit concluded, there was no evidence that the employees' consideration for the lump sum payments, which was rendered prepetition and not to the debtor-in-possession, was beneficial to the debtor-in-possession in the operation of the business, as required under the statute.[37] As a result, the Tenth Circuit concluded that the lump sum payments were not entitled to administrative priority.

Similarly, the Fifth Circuit case, *Phones for All*, dealt with an employee who had signed an employment contract with a severance provision entitling him, upon termination, to his pay for the remainder of the contract, or twelve months, whichever was greater. The Bankruptcy Court found that the employee earned his severance when he entered into the contract, which was prepetition, and not when he was actually terminated.[38] The Bankruptcy Code contains a specific provision, § 507(a)(3)(A), dealing with prepetition severance claims, granting them a priority ahead of other prepetition claims, but behind postpetition administrative expense claims. Such priority is available to the extent severance is earned within ninety days prior to the filing of the bankruptcy case. Since the severance in the *Phones for All* case was earned prepetition, the Fifth Circuit held, it should be treated as a prepetition claim.[39]

The Eighth Circuit has recognized that one portion of a claim can be treated as an administrative expense, while another portion is treated as a priority unsecured claim.[40] In *L.J. O'Neill Shoe Co.*, a taxing authority's claim against a corporation was treated as an administrative expense to the extent the corporation had earned income after the filing of its bankruptcy case, and as an unsecured priority claim to the extent the income had been earned prepetition.[41] At least one court has applied that same reasoning to employee severance claims.[42]

■ Here, as stated, we have three different categories of employees with claims at issue. The Executive Salaried Employees seek one year's salary as severance, regardless of their length of service to the company. As found by the Courts in *Commercial Financial* and *Phones for All*, the right to such severance was earned prepetition, and is, therefore, an unsecured claim.

■ On the other hand, the Supervisory Salaried Employees seek two weeks salary, plus one week for each year worked, and the Salaried Employees seek two weeks salary, plus two weeks for each year of service. Section 503(b)(1)(A) provides postpetition administrative expense treat-

---

**35.** *Id.* at 1294–95.

**36.** *Id.* at 1295.

**37.** *Id.* at 1295–96.

**38.** 249 B.R. 426.

**39.** 288 F.3d at 732.

**40.** *In re L.J. O'Neill Shoe Co.*, 64 F.3d 1146 (8th Cir.1995).

**41.** *Id.* at 1151.

**42.** *In re Gateway Apparel, Inc.*, 238 B.R. 162 (Bankr.E.D.Mo.1999).

ment for the actual and necessary costs of preserving the estate. In *In re Gateway Apparel,* the Court found that, to the extent severance pay accrued after the filing of the petition, that severance pay was entitled to administrative expense treatment.[43] Here, as to the Supervisory Salaried Employees and the Salaried Employees, a small amount of severance pay did accrue after the filing of the petition because it was based on the postpetition work performed for the debtor-in-possession. The accrual of that additional severance pay was compensation for the services those employees provided to the Debtor, and was a benefit to the estate and its creditors. Therefore, to the extent severance accrued postpetition, that severance is entitled to administrative expense treatment. In addition, to the extent that the Supervisory Salaried Employees and the Salaried Employees' severance was earned within the ninety days preceding the filing of the bankruptcy petition, such pay may be accorded third priority under § 507(a)(3)(A).

For example, the Supervisory Salaried Employees are entitled to two weeks salary plus one week for each year of service. I find that, if such an employee worked one week postpetition, that employee is entitled to administrative expense priority as to one week's pay, divided by fifty-two. Such employee is similarly entitled to prepetition priority treatment as to the portion of such severance pay which accrued in the 90 days prior to the bankruptcy filing.[44] Similarly, the Salaried Employees are entitled to two weeks salary as severance, plus two weeks pay for each year worked. I find that, if such an employee worked one week postpetition, he is entitled to administrative expense priority as

to two weeks pay divided by fifty-two, and prepetition priority pay as previously described. The remainder of the claims for severance will be classified as general unsecured claims.

■ With regard to Ms. Samayoa, I find that her termination occurred prepetition and she is therefore not entitled to priority as to her claim for severance. She testified that, although her resignation was to be effective the evening of September 3, 2002,[45] she had been asked to come in for part of the following day to finish up some items in preparation for the bankruptcy filing and that she did so. However, she further testified she left the office by about 4:00 p.m. on September 4, whereas the bankruptcy petition was filed at 5:47 p.m. that evening. Regardless, her resignation became effective prior to the bankruptcy petition being filed and her claim for severance is, therefore, a prepetition claim which is not entitled to administrative expense priority.

*Vacation Pay*

■ Also as in the *Gateway* case, a portion of some of the employees' claims here include a request for vacation pay. "To the extent that Counsels' arguments concerning severance pay are applicable to the claims for vacation pay, the determinations set out herein are controlling."[46] As a result, to the extent that the employees' vacation pay accrued postpetition, such pay is entitled to administrative expense treatment under § 507(a)(1). To the extent it was earned within the ninety days preceding the filing of the petition, such pay may be accorded third priority up to the dollar limits allowed under

---

43. *Id.* at 166.

44. 11 U.S.C. § 507(a)(3)(A).

45. Respondent's Exhibit A.

46. *Gateway,* 238 B.R. at 166–67.

§ 507(a)(3)(A). Further, because the Executive Salaried Employees arguably earned some vacation pay during these two periods, in contrast to the severance pay, their requests for vacation pay will be treated in this fashion.

### Pension and 401k Contributions

Additionally, the employees seek unspecified pension amounts, as well as 401k contributions, and request that they be afforded administrative priority as well. However, the employees have presented no evidence at all as to these requests and therefore, the requests regarding pension and 401k contributions will be denied.

### Automobile Allowance

Finally, some of the employees also seek payment of and administrative priority for automobile allowances. However, as with the Executive Salaried Employees' severance pay, this obligation was incurred as a prepetition obligation, rather than being earned based on length of service, and is, therefore, not entitled to administrative priority under either §§ 507(a)(1) or 507(a)(3).

An Order consistent with this Memorandum Opinion will be entered this date.