**In re JARTRAN, INC., Debtor.**

**Bankruptcy No. 81 B 16118.**

United States Bankruptcy Court,
N.D. Illinois, E.D.

Sept. 30, 1983.

Gerald F. Munitz, Nachman, Munitz & Sweig, Ltd., Chicago, Ill., for debtor.

James E. Carmel, Carmel, Baker & Marcus, Ltd., Chicago, Ill., for Sandra C. Tinsley, Inc. and Reuben H. Donnelley Corp.

## ORDER

LAWRENCE FISHER, Bankruptcy Judge.

This matter coming on to be heard upon the Amended Application of SANDRA C. TINSLEY, INC. and the REUBEN H. DONNELLEY CORPORATION (hereinafter referred to as "RHD") for Allowance of an administrative priority claim pursuant to Section 503(b)(1)(A) of the Bankruptcy Code, and upon the Debtor's Answer thereto, and the parties appearing by their respective attorneys, and

The Court having examined the pleadings filed in this matter, and having received and examined the Memoranda of the parties in support of their respective positions, and having heard the arguments of counsel, and the Court being fully advised in the premises;

The Court Finds:

1. On December 31, 1981, JARTRAN, INC. filed a voluntary petition in bankruptcy under Chapter 11 of the Bankruptcy Code.

2. On or about September 11, 1979, RHD, SANDRA C. TINSLEY, INC., and JARTRAN, INC. entered into an Agreement for National Yellow Pages Service whereby RHD was requested and authorized to insert telephone directory advertising in various telephone directories. The Agreement also stated that JARTRAN, INC. agreed to pay any billings of RHD issued to SANDRA C. TINSLEY, INC. if SANDRA C. TINSLEY, INC. failed to make such payments when due.

3. In the normal course of business and in accordance with the terms and conditions of the Agreement, JARTRAN, INC. placed orders for advertising with SANDRA C. TINSLEY, INC. The orders placed by JARTRAN, INC. with SANDRA C. TINSLEY, INC. were forwarded by SANDRA C. TINSLEY, INC. to RHD who transmitted them to the publishers of the respective telephone directories for publication of JARTRAN, INC. advertisements.

4. It is customary in the publication of telephone directories for the publishers to establish a date by which no further orders for advertising or removal of orders previously made can take place. Said date is known as the "closing date." Subsequent to the closing date, actual publication of the directories takes place and directory distribution to the general public is thereafter made.

5. RHD and SANDRA C. TINSLEY, INC. seek priority status for billings generated by reason of advertising which was placed with publishers prior to January 1, 1982 and which advertising could not be withdrawn because the closing date for said advertising had expired prior to January 1, 1982. Because of customary and usual billing procedures, a significant portion of the above billings have been or will be submitted by RHD to SANDRA C. TINSLEY, INC., and by SANDRA C. TINSLEY to JARTRAN, INC. after January 1, 1982. All of the aforedescribed advertising will

appear during the administration of the Chapter 11 *Jartran, Inc.* case.

6. RHD and SANDRA C. TINSLEY, INC. are not claiming administrative priority status for billings for advertising which was published before January 1, 1982. They agree that said billings should be treated as prepetition general unsecured debt. Further, the parties agree that claims for advertising which appear in directories which were "closed" and published on or after December 31, 1982 are administrative priority claims. Accordingly, said claims are not included in the Application currently before the Court.

The Court Concludes and Further Finds:

1. Section 503(b)(1)(A) of the Bankruptcy Code provides in pertinent part as follows:

.  .  .  .  .

(b) After notice and a hearing, there shall be allowed, administrative expenses, other than claims allowed under section 502(f) of this title, including—

(1)(A) the actual, necessary costs and expenses of preserving the estate, including wages, salaries, or commissions for services rendered after the commencement of the case . . .

11 U.S.C. Section 503(b)(1)(A) (1979).

2. Section 503(b)(1)(A) was derived from Section 64a(1) of the repealed Bankruptcy Act. Accordingly, case law developed under Section 64a(1) is applicable to Section 503(b)(1)(A) of the Bankruptcy Code.

▪ 3. RHD and SANDRA C. TINSLEY contend that the services they furnished with regard to the placement of advertising resulted in a direct and substantial benefit to the estate. Assuming this contention is correct, it does not necessarily follow that their claim is entitled to priority status. In order to be entitled to priority status under Section 503(b)(1)(A), in addition to being beneficial to the Debtor-in-Possession in the operation of the business, the consideration supporting the claimant's right to payment must have been supplied to the Debtor-In-Possession. *Denton & Anderson Co. v. Induction Heating Corp.,* 178

F.2d 841 (2d Cir.1949); *In re Mammoth Mart, Inc.,* 536 F.2d 950 (1st Cir.1976).

In *In re Mammoth Mart, Inc.,* a case under the Bankruptcy Act, the First Circuit further commented on claims that are entitled to priority as actual necessary costs and expenses of preserving the estate. The Court stated:

"When third parties are induced to supply goods or services to the debtor-in-possession pursuant to a contract that has not been rejected, the purposes of Section 64a(1) plainly require that their claims be afforded priority. It is equally clear that a claimant who fully performs under a contract prior to the filing of the petition will not be entitled to first priority even though his services may have resulted in a direct benefit to the bankrupt estate after the filing."

536 F.2d at 954.

In the instant case, the Debtor-In-Possession did not "induce" RHD or SANDRA C. TINSLEY, INC. to supply goods or services to the Debtor-In-Possession.

As to the second sentence in the passage quoted from *In re Mammoth Mart,* that a claimant who fully performs under a contract prior to the filing of the petition will not be entitled to priority, RHD and SANDRA C. TINSLEY contend that they had not fully performed prior to the date of bankruptcy. Further, they argue that the services were in fact supplied to the Debtor-In-Possession. As support for these contentions, RHD and SANDRA C. TINSLEY, INC. note that the advertisements which were ordered on behalf of JARTRAN, INC. were not actually published until after the filing of JARTRAN, INC.'s petition. The Debtor-In-Possession and the Debenture-holders, on the other hand, contend that all of the services were supplied to JARTRAN, INC. prior to December 31, 1981, the date of the bankruptcy filing, and that RHD and SANDRA C. TINSLEY furnished no services to the Debtor-In-Possession. It is their position that RHD and SANDRA C. TINSLEY fully performed under the agreement

prior to the filing of the bankruptcy petition.

All parties to this action apply the law of executory contracts to the subject dispute. The Debtor and the Debentureholders argue that the contract was not executory. RHD and SANDRA C. TINSLEY, INC. argue that the Agreement was executory because performance on their part was not complete until the publisher published the telephone directories including therein the advertisements as authorized by JARTRAN, INC. They state that if the advertisements were omitted or if the advertisements were incorrect, JARTRAN, INC. would have no liability to RHD and SANDRA C. TINSLEY, INC., inasmuch as there would have been a failure of performance on the part of RHD and SANDRA C. TINSLEY. RHD and SANDRA C. TINSLEY cite the case *In re Knutson*, 563 F.2d 916 (8th Cir.1977) in support of their position.

In *In re Knutson*, the court held that airline tickets purchased by the Debtor on credit but not yet used by the Debtor were executory contracts. The court held that at the time of the Debtor's petition, neither party had received a benefit under the ticket contract nor had either side performed its obligation under the contract. The *Knutson* case, however, is distinguishable from the case *sub judice*.

This Court finds that the instant contract was not executory. Further, this Court concludes that the debt to RHD and SANDRA C. TINSLEY, INC. is not an "actual, necessary cost and expense of preserving the estate."

██ In the instant case, JARTRAN, INC. had not received the benefit of the published advertisements as of the date of bankruptcy. Unlike *Knutson*, however, one party to the agreement had fully performed as of the date of bankruptcy. As of that date, RHD and SANDRA C. TINSLEY had complied with their obligations to place the advertisements with the publishers. In fact, the "closing date" had already passed on advertisements for which priority payment is sought. The fact that performance on the part of the publishing companies was not complete as of the date of bankruptcy does not render the performance of RHD and SANDRA C. TINSLEY incomplete. As of December 31, 1981, there was nothing remaining for RHD and SANDRA C. TINSLEY to do, other than mailing invoices for services rendered. In the *Knutson* case, both the Debtor/passenger and creditor/airline had not yet performed the required contractual acts as of the bankruptcy filing. Here, the unperformed acts are those of the Debtor and third parties. Inasmuch as RHD and SANDRA C. TINSLEY, INC. had fully performed their contractual acts, the contract was not executory. Executory contracts may be assumed by the Debtor-In-Possession. However, this would occur only if there were some services or acts that the Debtor-In-Possession desired to induce the contracting party to perform. In the case *sub judice* there were no such services or acts.

Further, the instant case is analogous to *In re Induction Heating Corp.*, 178 F.2d 841 (2d Cir.1949). In that case, the Denton and Anderson Company had the exclusive right in the name of the debtor, to submit and procure orders for debtor's goods subject to acceptance by the debtor. The contract between the parties provided that commissions become due and payable only when the account is collected by Induction Heating Corp. Before the filing of the bankruptcy petition by Induction Heating Corp., Denton & Anderson Company had secured orders for debtor's goods which the debtor had accepted but not filled. After the bankruptcy filing the debtor filled those orders and was paid by the customers. Denton & Anderson Company alleged that commissions due them under those orders were entitled to administrative expense priority status. The Second Circuit, however, found that the commissions were payable only as general unsecured claims. The Court found that as of the date of bankruptcy, Denton & Anderson Company had fully performed. As in the case at bar, the debtor's obligation to pay and amount of said obligation was dependent only on performance by a third party. In the *Induc-*

*tion Heating Corp.* case, the debtor would have had no obligation to pay commissions to Denton & Anderson Company if the debtor had not received payment from the customers. Under such facts, as with the case currently before the Court, the claimant is not entitled to priority administrative status.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that the Application of SANDRA C. TINSLEY, INC. and the REUBEN H. DONNELLY CORPORATION for allowance of an administrative priority claim pursuant to Section 503(b)(1)(A) of the Bankruptcy Code be, and the same is hereby denied.