In re BUF–AIR FREIGHT, INC., Debtor.

Bankruptcy No. 93–10063 K.

United States Bankruptcy Court,
W.D. New York.

Nov. 15, 1994.

Harold P. Bulan, Trustee, Goldstein, Navagh, Bulan & Chiari, Buffalo, NY.

Peter P. Paravati, P.C. (Vincent M. DeBella, of counsel), Utica, NY, for New York State Teamsters Conference Pension & Retirement Fund.

MICHAEL J. KAPLAN, Chief Judge.

Before the Court is the Chapter 7 Trustee's objection to a proof of claim filed by the New York State Teamsters Conference Pension & Retirement Fund ("Pension Fund"). The Trustee objects to the Pension Fund's assertion that its "withdrawal liability" claim deserves priority status pursuant to 11 U.S.C. § 507.

Debtor Buf–Air Freight, Inc. ("Buf–Air") participated in a multiemployer pension fund for the benefit of its employees. This fund was regulated by the Multiemployer Pension Plan Amendments Act of 1980 ("MPPAA"). 29 U.S.C. § 1301 et seq. MPPAA provides that an employer who stops contributing to a plan shall be assessed a "withdrawal liability." 29 U.S.C. § 1381.

### Issue

The issue presented to this Court is whether a claim based on a debtor's withdrawal liability that arises pre-petition is entitled to priority status under § 507 of the Bankruptcy Code or any provision of MPPAA.

### Analysis

The Pension Fund's claim of priority status is based upon 11 U.S.C. § 507(a)(4), which addresses unpaid employee benefits as discussed below. Although a § 507(a)(4) claim by Pension Fund seems to be a matter of first impression, a similar claim under § 507(a)(1) is not, and a brief analysis of that claim will prove useful.

#### Section 507(a)(1)

This Court is bound by *Trustees of Amalgamated Ins. Fund v. McFarlin's*, 789 F.2d 98 (2nd Cir.1986). In *McFarlin's*, the Court of Appeals ruled that the debtor's withdrawal liability, arising post-petition, was not entitled to § 507(a)(1) priority. The court noted that, "A debt is not entitled to priority simply because the right to payment arises after the debtor in possession has begun managing the estate." *McFarlin's*, 789 F.2d at 101 (citations omitted). Rather, "an expense is administrative ... 'only to the extent that the consideration supporting the claimant's right to payment was both supplied to and beneficial to the debtor-in-possession in the operation of the business.'" *McFarlin's*, 789 F.2d at 101 (quoting *In re Mammoth Mart, Inc.*, 536 F.2d 950, 954 (1st Cir.1976)). The court then explained that withdrawal liability is "an

obligation that arises on account of work" that was already performed, and it determined that the consideration for such obligation was given pre-petition.

The Second Circuit thus established that withdrawal liability is not considered to be of equivalent status as post-withdrawal wages. It is significant that the *McFarlin's* court recognized that the withdrawal liability "arose" no earlier than at the time of withdrawal, and that the liability was merely "based on" pre-withdrawal activity; the pre-withdrawal work of employees constituted the "consideration" for the withdrawal liability, but the withdrawal liability did not "arise" before withdrawal. "[T]he liability represents an employer's accelerated contribution of funds needed to finance employees' pension rights which have vested at the time of withdrawal but which have not been fully funded at that date," said the Court. *McFarlin's,* 789 F.2d at 103.

With these understandings, the analysis of the present claim may proceed.

### Section 507(a)(4)

Buf–Air filed its Chapter 11 petition on January 13, 1993. Pension Fund claims that it is entitled to priority status based on § 507(a)(4), which affords priority to "allowed unsecured claims for contributions to an employee benefit plan ... arising from services rendered within 180 days before the date of the filing of the petition or the date of the cessation of the debtor's business, whichever occurs first." 11 U.S.C. § 507(a)(4). Buf–Air withdrew from the Pension Fund on April 25, 1992, but continued to do business until August 16, 1992. Because April 25, 1992 was within 180 days of August 16, 1992, it might at first blush seem that § 507(a)(4) would cover, at the least, the Pension Fund contributions that Buf–Air did not make between April and August of 1992. However, it is important to distinguish between the term "contribution" as it refers to money that the employer was contractually obligated to pay

to a benefit plan on behalf of its employees while those employees were working, and the term "contribution" as it refers to the "accelerated" amounts imposed upon withdrawal. If Buf–Air legally withdrew from the Pension Fund after the expiration of the collective bargaining agreement, and if it remained current on its payments to the Pension Fund up until the time it withdrew, then it had no unpaid liability for failure to make "contributions" to the Pension Fund in the former sense.[1]

However, Buf–Air would still have the statutory "withdrawal liability" that Congress has imposed on employers who legally cease contributing to employee benefit funds. Having determined that it is undesirable to have inadequately funded pension funds, Congress created withdrawal liability to make up a portion of the difference between a pension fund's current assets, and the present value of its calculated future obligations.[2]

As the *McFarlin's* court observed, withdrawal liability is based on past work done by the covered employees. Although this might suggest that withdrawal liability is really an unpaid portion of the employees' wages, that is not accurate. Reference to how many hours the employees have worked in the past is made simply to enable the actuaries to determine what the pension fund's obligations will likely be in the future when the covered employees retire. This number is needed in order to calculate the shortfall of the fund's assets. It is misleading, therefore, to think of the withdrawal liability as something that an employer *owes* its employees pursuant to their contract. Rather, as the *McFarlin's* Court pointed out, it is an obligation imposed by Congress as a super-added liability to ensure the pension fund's ability to meet its vested future obligations. It derives from statute, and does not arise out of or represent any unfilled prior obligations under a collective bargaining agreement or employment contract. Withdrawal liability represents *future* benefit

---

1. The Court's order will make allowance for the possibility that Buf–Air did not remain current.

2. For a comprehensive discussion of the history and purpose of MPPAA and withdrawal liability,

*see generally Peick v. Pension Benefit Guar. Corp.,* 724 F.2d 1247 (7th Cir.1983), and the Second Circuit's decision in *McFarlin's,* 789 F.2d 98.

contributions that will not be paid, and it is merely measured by the prior period.

Labor law and pension law refer to such payments as "contributions." But even assuming that they might be "contributions" as that word is used in § 507(a)(4), they are not "contributions arising from services` performed" before withdrawal, as that phrase is used in that statute.

Not everything that is measured by or attributable to past events "arises from" those events. Consider three illustrations.

Capital gains taxes do not "arise from" having owned an asset. They "arise from" *the sale* of an asset, and are merely measured by the previous circumstances.

Similarly, liquidated damages need not always "arise from" prior conduct. They may arise from a decision to withdraw from a contract on which all obligations are current, and may be measured by previous conduct, if the provision so requires.

Finally, membership or condominium associations, and professional firms often impose an assessment to meet budget shortfalls. Such assessments arise not out of the under-funded services, but they are measured by such services and arise from the desire, duty or covenant to avoid deficit.

Many types of taxes, penalties, forfeitures, assessments and "contributions" that are measured by prior activities do not "arise from" those activities, and the withdrawal liability here at issue is but another example.

### Conclusion

Pension Fund's claim is not of the nature contemplated by § 507 of the Bankruptcy Code and any claim of priority based on ERISA was rejected in the *McFarlin's* case. The Trustee's objection must be sustained, and the claim for withdrawal liability shall be treated as a general unsecured claim.

If any portion of the claim is for unpaid contributions prior to withdrawal, but during the priority period, leave is granted to amend the claim within 20 days, not to exceed the dollar limitation contained in § 507(a)(3) and (4).

So ordered.