# United States Court of Appeals
## For the First Circuit

Nos. 23-1045
    23-1046
    23-1047
    23-1048
    23-1049

IN RE: THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, AS REPRESENTATIVE FOR THE COMMONWEALTH OF PUERTO RICO; THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, AS REPRESENTATIVE FOR THE PUERTO RICO SALES TAX FINANCING CORPORATION, a/k/a Cofina; THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, AS REPRESENTATIVE FOR THE EMPLOYEES RETIREMENT SYSTEM OF THE GOVERNMENT OF THE COMMONWEALTH OF PUERTO RICO; THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, AS REPRESENTATIVE FOR THE PUERTO RICO HIGHWAYS AND TRANSPORTATION AUTHORITY; THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, AS REPRESENTATIVE FOR THE PUERTO RICO ELECTRIC POWER AUTHORITY (PREPA); THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, AS REPRESENTATIVE OF THE PUERTO RICO PUBLIC BUILDINGS AUTHORITY,

Debtors.

THE ABRAHAM GIMÉNEZ PLAINTIFF GROUP, a/k/a Group Wage Creditors in the Litigation Captioned Abraham Giménez, et al. v. Department of Transportation and Public Works, CASP Case No. 2021-05-0346; THE CRUZ HERNANDEZ PLAINTIFF GROUP, a/k/a Group Wage Creditors in the Litigation Captioned Carmen Socorro Cruz Hernandez, et al. v. Family Department, ARV, and AIJ of the Commonwealth of Puerto Rico, Case No. K AC 1991-0665; THE BELTRAN-CINTRON PLAINTIFF GROUP, a/k/a Group Wage Creditors in the Litigation Captioned Francisco Beltran-Cintron, et al. v. Family Department, ARV, and AIJ of the Commonwealth of Puerto Rico, CASP Case No. 2021-05-0345; THE ACEVEDO-CAMACHO PLAINTIFF GROUP, a/k/a Group Wage Creditors in the Litigation Captioned Madeline Acevedo-Camacho, et al. v. Family Department, ARV, and AIJ of the Commonwealth of Puerto Rico, CASP Case No.

2016-05-1340; THE ACEVEDO AROCHO PLAINTIFF GROUP, a/k/a Group Wage Creditors in Litigation Captioned Prudencio Acevedo Arocho, et al. v. Puerto Rico Department of Treasury, Case No. K AC-2005-5022,

Appellants,

v.

THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, AS REPRESENTATIVE FOR THE COMMONWEALTH OF PUERTO RICO,

Appellee.

---

APPEALS FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Laura Taylor Swain,[*] U.S. District Judge]

---

Before

Montecalvo, Lipez, and Thompson,
Circuit Judges.

---

Jesus E. Batista Sánchez, with whom The Batista Law Group, PSC, was on brief, for appellants.

Shiloh A. Rainwater, with whom Timothy W. Mungovan, John E. Roberts, Martin J. Bienenstock, Brian S. Rosen, Mark D. Harris, and Proskauer Rose LLP were on brief, for appellee.

---

February 9, 2024

---

[*] Chief Judge of the Southern District of New York, sitting by designation.

**MONTECALVO, Circuit Judge**. We consider again the application of the Puerto Rico Oversight, Management, and Economic Stability Act ("PROMESA"), this time in the context of administrative-expense-priority provisions of the federal Bankruptcy Code that are incorporated into PROMESA. Appellants are five groups of current and former public employees in the Commonwealth of Puerto Rico (the "Commonwealth") who allege they are owed millions of dollars in back pay for work they performed before and after commencement of the Commonwealth's debt restructuring case under Title III of PROMESA (the "Five Groups"). They appeal an order by the court overseeing the Commonwealth-wide debt restructuring litigation (the "Title III court") on their motions to secure administrative-expense priority for their back pay claims. For the reasons explained below, we affirm the Title III court's ruling on these motions.

## I. Background

In response to the government debt crisis in Puerto Rico, Congress passed PROMESA in 2016, which created the Puerto Rico Financial Oversight and Management Board (the "Board") to restructure the Commonwealth's massive debt. See 48 U.S.C. §§ 2121, 2194(m). Title III of PROMESA authorizes the Board to file a debt-restructuring case on the Commonwealth's behalf, see 48 U.S.C. §§ 2164, 2175, and the Board commenced such a case in May 2017.

In various litigation and administrative actions separate from the Title III case, appellants have claimed that their public employers' decisions to adjust upward the wages paid to other employees who previously were paid below the minimum wage while leaving appellants' wages unchanged eliminated merits-based distinctions and rendered inoperative the progressive compensation system mandated by Puerto Rico law. Each of the Five Groups previously sued their public employers (in Puerto Rico commonwealth courts, not federal courts) for back pay to compensate for the employers' failure to adjust appellants' wages upward.

One of the Five Groups, the Cruz-Hernandez Group, has already had a judgment entered in its underlying litigation in Puerto Rico court against the group members' public employers. The parties in that case reached a settlement agreement in the underlying litigation concerning updated pay scales, and, in 2006, the court entered judgment approving that settlement. The outstanding unpaid claims for that group are for back pay for work performed prior to the 2017 Title III petition. Thus, we refer to these claims as "pre-petition" and "post-judgment" claims.

The underlying cases filed by the other four groups against their public employers remain pending in Puerto Rico court -- there has not yet been a determination of liability or final judgment entered in those cases (i.e., they are all "pre-judgment"

claims).[1]  Those cases seek back pay for work performed both pre-
and post-Title III petition.

In June 2022, the Five Groups moved the Title III court
for administrative-expense priority for their claims for back pay
for work performed both before and after the 2017 Title III
petition date.  "Administrative-expense priority" refers to the
priority status that expenses qualifying as "administrative
expenses" receive in the order of payment in a bankruptcy case.
See In re Powermate Holding Corp., 394 B.R. 765, 771-72 (Bankr. D.
Del. 2008).  This category of expenses is paid by debtors to
creditors earlier than other categories of expenses in a Title III
case.  See id.; In re Fin. Oversight & Mgmt. Bd. for P.R., 7 F.4th
31, 37 (1st Cir. 2021).  The definition of "administrative expense"
in a Title III case comes from section 503(b) of the Bankruptcy
Code, which PROMESA incorporates.  See 11 U.S.C. § 503(b); 48
U.S.C. § 2161; see also In re Fin. Oversight & Mgmt. Bd. for P.R.,
7 F.4th at 37.  The provision provides:

> (b) After notice and a hearing, there shall be
> allowed administrative expenses, other than
> claims allowed under section 502(f) of this
> title, including—

---

[1]    The Acevedo-Arocho Group had a partial judgment entered
in February 2017 dismissing most of the Group's claims as
time-barred, but that judgment has since been reversed in part by
the Puerto Rico Supreme Court.  That case is now remanded for a
claimant-by-claimant determination of timeliness; the remanded
action remained pending as of the time the parties briefed this
case.

(1)

(A) the actual, necessary costs and expenses of preserving the estate including—

(i) wages, salaries, and commissions for services rendered after the commencement of the case; and

(ii) wages and benefits awarded pursuant to a judicial proceeding or a proceeding of the National Labor Relations Board as back pay attributable to any period of time occurring after commencement of the case under this title, as a result of a violation of Federal or State law by the debtor, without regard to the time of the occurrence of unlawful conduct on which such award is based or to whether any services were rendered, if the court determines that payment of wages and benefits by reason of the operation of this clause will not substantially increase the probability of layoff or termination of current employees, or of nonpayment of domestic support obligations, during the case under this title[.]

§ 503(b). Congress added subsection (ii) above as an amendment to the Bankruptcy Code in 2005 as part of the Bankruptcy Abuse Prevention and Consumer Protection Act ("BAPCPA"). Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8, § 329, 119 Stat. 23, 101 (2005); see also In re Powermate, 394 B.R. at 772.

The Title III court had previously, in 2021, rejected earlier efforts by individual plaintiffs in the appellant groups to assert administrative-expense priority for back pay for work performed before the Commonwealth's petition date. In re Fin. Oversight & Mgmt. Bd. for P.R., No. 17-BK-3283 (Bankr. D.P.R. filed Apr. 18, 2022) (docket no. 20569). In rejecting these efforts, the Title III court held that only claims attributable to the post-petition period can qualify as administrative expenses. Id. at 3.

The subsequent June 2022 motions to secure administrative-expense priority by the Five Groups concerned back pay for work performed both before and after the 2017 Title III petition date. In an oral order, the Title III court made the following three general categories of rulings on the administrative-expense-priority claims.

First, the court denied the requests to the extent they sought immediate payment of back pay for claims still pending/lacking final judgment in the underlying commonwealth court and agency proceedings, reasoning that "administrative expense claimants have the burden of conclusively establishing the liability of the debtor before seeking a ruling on entitlement to priority treatment."

Second, the court declined to rule on whether any of the claims arising from work performed post-petition qualified for

administrative-expense status because those claims were contingent on appellants obtaining judgments in the still-pending underlying commonwealth court and agency actions. The court explained that though it was "not ruling on [whether the still-pending post-petition work claims qualified for administrative-expense status] today," the court was "leaving it to the Debtor to handle liquidation and any payment of that claim or objection to that claim in the ordinary course of resolution of claims" after judgment issued in the underlying cases. Relatedly, the court denied the requests for a "comfort order" that appellants' post-petition wage claims would count as administrative expenses if they won the underlying still-pending cases (at a future date). It also denied the requests for the court to order the Commonwealth to set aside hundreds of millions of dollars in a reserve to pay the judgments if appellants won the underlying still-pending cases in the future. The court explained:

> Any comfort orders with respect to the future treatment of [appellants'] potential . . . post[-]petition claims would be a premature and improper advisory opinion, because the Commonwealth's liability has not yet been established. Further, [appellants'] request that the Court order the Commonwealth to set aside funds to satisfy potential future rulings is unsupported by any basis in law or in fact.

Third, the court denied the motion to the extent that it sought administrative-expense priority for back pay claims arising

from pre-petition work by the Cruz-Hernandez Group (the group that had already obtained a judgment). It denied that request for the same reason it denied the similar requests in 2021 (described above). Specifically, the court explained that the wages attributable to the pre-petition period did not qualify for administrative-expense priority under the "plain language" of § 503(b)(1)(A)(ii) because they are not "wages and benefits awarded pursuant to a judicial proceeding . . . as back pay attributable to any period of time occurring after commencement of the case under this title." (emphasis added).

The court issued a brief written order denying the motions described above "[f]or the reasons stated on the record" in its oral order. The employee groups subsequently filed a motion for reconsideration of that order, which the Title III court denied in a written order that found no errors of fact or law in its previous ruling that would justify reconsideration. In that latter order, the court again explained its view that the pre-petition claims did not qualify as administrative expenses because they were not attributable to a period of time after commencement of the Title III petition and again clarified that although the claims for administrative-expense status for the post-petition claims were filed prematurely, those claims were not "disallowed or expunged."

- 9 -

Before us, the Five Groups appeal the Title III court's order on both the pre- and post-petition back pay claims.[2]

## II. Standard of Review

"We review the Title III court's legal conclusions de novo" and its "application of the law to the facts for abuse of discretion." In re Fin. Oversight & Mgmt. Bd. for P.R., 7 F.4th at 36. The Title III court's determination of whether a claim qualifies for administrative-expense treatment under § 503(b)(1)(A) is reviewed for abuse of discretion. See id. at 39.

## III. Discussion

Appellants challenge the Title III court's ruling on administrative-expense priority as to two separate groups of claims: (1) claims for back pay for work performed prior to May 2017 when the Title III case commenced (the "pre-petition claims") and (2) claims for back pay for work performed after May 2017 when the Title III case commenced (the "post-petition claims"). We review the Title III court's ruling as to these two groups of claims in turn.

### A. Pre-Petition Claims

Appellants first take issue with the Title III court's ruling that back pay claims arising from work performed

_____

[2] The consolidated appeal before us was originally five separate appeals by each of the Five Groups individually.

- 10 -

pre-petition do not qualify as administrative expenses under § 503(b). The statutory definition of "administrative expenses" includes, in relevant part:

> wages and benefits awarded pursuant to a judicial proceeding or a proceeding of the National Labor Relations Board as <u>back pay attributable to any period of time occurring after commencement of the case</u> under this title, as a result of a violation of Federal or State law by the debtor, <u>without regard to the time of the occurrence of unlawful conduct on which such award is based</u> or to whether any services were rendered . . . .

§ 503(b)(1)(A)(ii) (emphasis added). "The burden of proving entitlement to administrative expense priority payment" lies with the party requesting it, <u>In re Hemingway Transp., Inc.</u>, 954 F.2d 1, 5 (1st Cir. 1992), and administrative-expense provisions are narrowly construed, <u>see</u> <u>In re Nichols</u>, 450 B.R. 307, 311 (Bankr. D. Mass. 2011); <u>In re 710 Long Ridge Rd. Operating Co., II, LLC</u>, 505 B.R. 163, 172-73 (Bankr. D.N.J. 2014).

The Title III court ruled that the pre-petition work claims were not for "back pay attributable to any period of time occurring after commencement of the case" and thus did not qualify for administrative-expense priority. We agree that the pre-petition work claims are not "attributable to" a post-petition time period and therefore cannot qualify as administrative expenses under § 503(b)(1)(A)(ii).

Appellants' only argument as to how the pre-petition work claims could qualify as "attributable to any period of time occurring after commencement" of the Title III case is that because the back pay remains unpaid, damages "continue[d] to flow to [a]ppellants" after the petition date.[3]  This theory makes little practical sense.  As appellee, the Board, points out, appellants' theory would mean that in every instance in which a creditor has a pre-petition claim that has not yet been paid, the debtor would be considered to have failed to pay the claim during the post-petition period, and thus the claims would be considered "attributable to" the post-petition period.  We do not read the "attributable to" language as supporting such a theory.

Appellants' primary argument concerning the pre-petition work claims focuses on the second underlined clause in the statutory text quoted above: the part that reads "without regard to the time of the occurrence of unlawful conduct on which such award is based."  § 503(b)(1)(A)(ii).  Appellants interpret this passage to mean that, in their case, it does not matter that the unlawful conduct -- the employers' failure to pay appropriate wages -- occurred prior to the petition date.  They assert that it was erroneous for the Title III court to deny administrative-expense

---

[3]    The post-judgment plaintiff group (the Cruz-Hernandez Group) has not argued that it has any post-petition claims in addition to its pre-petition claims at issue in this case.

- 12 -

status to the pre-petition claims based on the claims having "long predate[d] the debtors' Title III petitions" when the time of occurrence of the unlawful conduct is "without relevance under [§] 503(b)(1)(A)(ii)."

As some other courts have noted, § 503(b)(1)(A)(ii) appears somewhat confusing because of the potential contradiction between the "attributable to" and "without regard to" phrases: "the plain meaning of the statute requires a court to determine if a claim relates to a post-petition time period despite the fact that the violation timing is of no regard." In re Calumet Photographic, Inc., No. 14-08893, 2016 WL 3035468, at *3 (Bankr. N.D. Ill. May 19, 2016); see also In re Powermate, 394 B.R. at 774-75.

There are no cases from this court or district or bankruptcy courts within the circuit interpreting the current § 503(b)(1)(A)(ii) language, following its addition to the Bankruptcy Code in 2005.[4] Out-of-circuit courts that have applied

---

[4] The Board urges us to rely on First Circuit cases interpreting and applying older versions of the statute, prior to the 2005 BAPCPA amendment. The language at issue in those cases, however, is significantly different from that at issue here. In re Boston Regional Medical Center, Inc., and In re FBI Distribution Corp. interpreted the language that now appears in subsection (i) of § 503(b)(1)(A), not the new subsection (ii) provision added by BAPCPA and at issue in this case. Compare In re Bos. Reg'l Med. Ctr., Inc., 291 F.3d 111, 118 n.6 (1st Cir. 2002), and In re FBI Distrib. Corp., 330 F.3d 36, 41 (1st Cir. 2003), with § 503(b)(1)(A)(i), (ii). The language discussed in those older cases defined administrative expenses as including "wages,

- 13 -

this provision consistently do not interpret the "without regard to the time of the occurrence" clause to override the separate requirement that the claims be "attributable to any period of time occurring after commencement of the case."  § 503(b)(1)(A)(ii); see, e.g., In re Powermate, 394 B.R. at 774-75 ("A closer reading, however, reveals that the only relevant consideration is the former time, the time to which the back pay is attributable . . . and how that time relates to the petition date."); In re Phila. Newspapers, LLC., 433 B.R. 164, 175 (Bankr. E.D. Pa. 2010) (interpreting § 503(b)(1)(A)(ii) as including a requirement that back pay be "awarded for any period of time 'attributable to any time occurring after commencement of the case'" despite the "without regard to" clause); In re Truland Grp., Inc., 520 B.R. 197, 203-04 (Bankr. E.D. Va. 2014) (adopting the Philadelphia Newspapers

_____

salaries, or commissions for services rendered after the commencement of the case . . . ."  In re Bos. Reg'l Med. Ctr., 291 F.3d at 118 n.6; In re FBI Distrib. Corp., 330 F.3d at 41; see also § 503(b)(1)(A)(i).  Subsection (ii)'s language is significantly different in that it uses the broader terms "attributable to" in defining the timing requirement.  See § 503(b)(1)(A)(ii) ("[W]ages and benefits awarded . . . as back pay attributable to any period of time occurring after commencement of the case." (emphasis added)).  Additionally, the subsection (i) language discussed in the older cases does not include the "without regard to the time of the occurrence of unlawful conduct" subsection (ii) clause on which appellants now rely.  See In re Bos. Reg'l Med. Ctr., 291 F.3d at 118 n.6; In re FBI Distrib. Corp., 330 F.3d at 41.  Another case that the Board points to, In re Mammoth Mart, Inc., involves an even older version of the statute.  See 536 F.2d 950, 953-55 (1st Cir. 1976).  Those older cases are thus of limited significance for the statutory interpretation issues before us now.

- 14 -

interpretation of subsection (ii), which applies the "attributable to" requirement despite the "without regard to" clause). Multiple courts have denied administrative-expense treatment to pre-petition claims despite the "without regard to the time of the occurrence" language. See, e.g., In re Calumet Photographic, Inc., 2016 WL 3035468, at *3-*4, *3 n.15; In re Powermate, 394 B.R. at 778; In re Trump Ent. Resorts, Inc., 2015 WL 1084294, at *4 (Bankr. D. Del. Mar. 9, 2015).

Where the out-of-circuit courts diverge is on the precise meaning of "attributable to." There is a dispute in the case law over whether the date on which the back pay claims "vest" or "accrue" is the date to which the claims are "attributable." The In re Powermate court held that the vesting or accrual date is the relevant time period:

> [T]he only relevant consideration is . . . the time to which the back pay is attributable which is when the rights or claims vest or accrue, and how that time relates to the petition date. If a claim vests pre-petition, then the back pay is attributable to the time occurring prior to the commencement of the case and therefore it is not an administrative expense claim. . . . When the unlawful conduct occurred and/or services were rendered does not affect this determination.

In re Powermate, 394 B.R. at 774-75 (emphasis omitted). Other courts disagree that the statutory text supports such an interpretation. See In re Phila. Newspapers, LLC., 433 B.R. at 174 ("Had Congress intended to condition subsection (ii) on when

- 15 -

a right or claim for back pay 'vested' or 'accrued,' it could have said so. It did not and, for that reason, this Court will not impose that requirement on this new subsection to § 503(b)(1)(A)."); In re Truland Grp., 520 B.R. at 203 ("The focus on the timing of vesting, in the Court's view, is inconsistent with the plain language of subsection (ii) of [§] 503(b)(1)(A)-- that the employees are entitled to an administrative expense 'without regard to the time of the occurrence of unlawful conduct on which such award is based or to whether any services were rendered[.]' Powermate's focus on vesting cannot be squared with the 'without regard to the time' language of the statute." (alteration in original) (citation omitted)). Appellants reference this dispute in arguing for administrative-expense treatment of their pre-petition claims, suggesting that the notion that "the work which underlies the [§] 503(b)(1)(A) claim must have been 'incurred' or 'vested' post-petition" is based on "widely rejected" case law.

We need not wade into this debate because the parties have not explained, nor do we see, any reason why the question of whether "attributable to" refers to the vesting or accrual date would make a difference with regard to the administrative-expense treatment of the pre-petition back pay claims at issue here. The pre-petition claims here are based on work that was entirely performed prior to the May 2017 petition date. There is no

- 16 -

allegation that any statute or regulation would make the claim for these back pay wages vest or accrue after the 2017 petition date. Thus, "[t]he latest date any portion of the [pre-petition claims] to which back pay could conceivably be attributable" was before the petition date. In re Trump Ent. Resorts, Inc., 2015 WL 1084294, at *4 (recognizing the divergent interpretations of "attributable to" but explaining, without taking a position on which interpretation is correct, that even under the interpretation most favorable to the party seeking administrative-expense priority the judgment at issue could not be attributable to a post-petition time period).

Finally, appellants contend that the Title III court's analysis of and decision on the pre-petition claims was essentially an application of subsection (i) of § 503(b)(1)(A) rather than subsection (ii), reflecting the court's failure to acknowledge and apply Congress's expansion of what can constitute an administrative expense by its addition of subsection (ii) in the 2005 amendment. Appellants argue that, under subsection (ii), administrative-expense treatment is no longer limited to claims regarding services performed post-petition; the standard instead requires analysis of whether the damages that flowed from the wrongful conduct in any way impacted the claimant post-petition. As explained above, we do not interpret subsection (ii) (and the "without regard to" language, specifically) as eliminating the

need to show that claims are "attributable to" the post-petition time period, nor do we view the mere fact that the claims continue to go unpaid as sufficient to show, without more, that the claims are "attributable to" the post-petition period. Our interpretation does not render subsection (ii) indistinguishable from subsection (i) because subsection (ii) expands administrative-expense treatment to certain types of claims not covered by subsection (i).[5] See, e.g., In re Tristar Fire Prot., Inc., 466 B.R. 392, 402 (Bankr. E.D. Mich. 2012) (distinguishing subsection (i) from subsection (ii) on the basis that subsection (ii) "does not require that any services actually be rendered after the commencement of the case in order to support the allowance of an administrative expense claim").

---

[5] For example, subsection (ii) expands administrative-expense treatment to claims based on situations where the debtor committed a violation of law before the petition date that resulted in the deprivation of wages after the petition date. This would include cases in which a wrongful discharge pre-petition resulted in the deprivation of wages that would have been paid post-petition. The wages that were constructively earned during the post-petition period (but not actually earned, because the employee was not actually working during the post-petition period) in those cases would not qualify as administrative expenses under subsection (i) because that first subsection only covers "wages, salaries, and commissions for services rendered after the commencement of the case." § 503(b)(1)(A)(i) (emphasis added); see also In re Tristar Fire Prot., Inc., 466 B.R. 392, 402 (Bankr. E.D. Mich. 2012).

We find no abuse of discretion in the Title III court's holding that appellants' pre-petition back pay claims do not qualify for administrative-expense treatment.

## B. Post-Petition, Pre-Judgment Claims

Appellants also challenge the Title III court's decision on their motion for administrative-expense priority for back pay claims concerning work performed post-petition but for which there has not yet been any judgment in the underlying commonwealth court and agency proceedings. This post-petition, pre-judgment claim issue involves a different portion of the same statutory provision -- the following underlined phrase:

> (ii) wages and benefits <u>awarded pursuant to a judicial proceeding</u> or a proceeding of the National Labor Relations Board as back pay attributable to any period of time occurring after commencement of the case under this title, as a result of a violation of Federal or State law by the debtor, without regard to the time of the occurrence of unlawful conduct on which such award is based or to whether any services were rendered . . . .

§ 503(b)(1)(A)(ii) (emphasis added). As described above, the Title III court declined to rule on whether any of the claims arising from work performed <u>post</u>-petition qualified for administrative-expense status because those claims were contingent on appellants obtaining judgments in the still-pending underlying commonwealth court and agency actions.

- 19 -

The Title III court explained in its oral ruling at the hearing that although it was "not ruling on [whether the still-pending, post-petition work claims qualified for administrative-expense status] today," the court was "leaving it to the Debtor to handle liquidation and any payment of that claim or objection to that claim in the ordinary course of resolution of claims" after judgment issued in the underlying cases. Relatedly, the court denied the requests for a "comfort order" that appellants' post-petition wage claims would count as administrative expenses should they win the underlying still-pending cases (at a future date).[6]

The Title III court's decision to defer a ruling on whether the post-petition claims qualify as administrative expenses until a later time, rather than granting any "comfort order" saying prospectively that certain post-petition claims will qualify as administrative expenses if the Puerto Rico courts or agencies determine that the public employers are liable for the back pay, was a decision within that court's discretion. The court was clear in both its oral ruling and its written ruling on the

—————————

[6]    The assertion in appellants' reply brief that appellees wrongly recharacterized appellants' claim as a "comfort order" is meritless, as at least one of the Five Groups called its requested relief a "comfort order" in its original application for allowance and payment of administrative-expense claims, and the Title III court judge referenced the requested "comfort order" relief in her oral ruling on the motions.

- 20 -

motion to reconsider that it was not disallowing or expunging these claims for administrative-expense status for post-petition claims altogether.

In general, "district courts have the inherent authority to manage their dockets and courtrooms with a view toward the efficient and expedient resolution of cases." Dietz v. Bouldin, 579 U.S. 40, 47 (2016); see also Rivera-Aponte v. Gomez Bus Line, Inc., 62 F.4th 1, 3 (1st Cir. 2023) ("To ensure the fair and prompt adjudication of cases, a district court must be able to manage its docket effectively and efficiently. To this end, we afford district courts a wide margin of discretion in the performance of their case-management functions."); In re Atl. Pipe Corp., 304 F.3d 135, 143 (1st Cir. 2002) ("[D]istrict courts have substantial inherent power to manage and control their calendars."). Although "the exercise of an inherent power cannot be contrary to any express grant of or limitation on the district court's power contained in a rule or statute," Dietz, 579 U.S. at 45, appellants have not pointed to any provision in the relevant statutes or other rule that would prohibit the Title III court from deferring resolution of the post-petition claims issue to a slightly later time in the proceedings.

Out-of-circuit administrative-expense case law supports the notion that the Title III court did not abuse its discretion in deferring its decision on the claims that had not yet reached

final judgments. For example, the court in In re Tristar Fire Protection, Inc., took a similar approach to the Title III court here in declining to rule on the administrative-expense status of particular claims before a decision-making body with jurisdiction to award back pay entered judgment. See 466 B.R. at 403. That court reasoned:

> since no award of wages and benefits for back pay has thus far been made either by the [National Labor Relations Board] or in a "judicial proceeding," and because this Court lacks jurisdiction to make such award, [the party asserting the administrative-expense claim] is not entitled, at least for now, to the allowance of an administrative-expense claim under § 503(b)(1)(A)(ii) of the Bankruptcy Code.

Id.

Appellants primarily point to two out-of-circuit cases, In re Truland Group, 520 B.R. 197, and In re 710 Long Ridge Road Operating Co., II, LLC, 505 B.R. 163, in arguing that the Title III court abused its discretion in declining to rule on the claims that had not yet received a judgment. However, while those cases support the notion that the court here could have issued a conditional order in advance of judgment on the underlying claims, they do not suggest that the court was required to issue that order. The courts in those cases considered debtors' requests to expunge or dismiss an administrative-expense claim for back pay on the ground that the claimant had not yet been awarded a judgment.

See In re 710 Long Ridge Rd., 505 B.R. at 174-75; In re Truland Grp., 520 B.R. at 204-05.  Those courts did grant conditional rulings stating that if judgment enters supporting the claims in the future, then those claims will qualify as administrative expenses for purposes of the bankruptcy proceedings.  See In re 710 Long Ridge Rd., 505 B.R. at 176 (holding that "the Claims attributable to the First Period are an administrative expense when and if a final judgment is awarded in the [National Labor Relations Board] proceedings"); In re Truland Grp., 520 B.R. at 204-05 ("[T]he Court holds that any wages and benefits that may be awarded pursuant to the WARN Act shall constitute administrative expenses under subsection (ii) of [§] 503(b)(1)(A) of the Code.").  But those cases do not suggest that a court is forbidden from deferring resolution of the administrative-expense status of claims to a later time in the proceedings, after there is a judgment on liability as to those claims.  Thus, those cases do not establish that the Title III court in the present case abused its discretion in deferring resolution of the pre-judgment claims.  We hold that the Title III court did not abuse its discretion and affirm its decision to defer ruling on the pre-judgment claims.[7]

---

[7]    To the extent appellants seek orders requiring immediate payment of back pay claims or requiring the Commonwealth to set aside a reserve as security for their claims, they have waived those requests by not addressing them in their opening brief.  See Vazquez-Rivera v. Figueroa, 759 F.3d 44, 47 (1st Cir. 2014) (explaining that arguments not raised in a party's opening brief

## IV. Conclusion

For the reasons stated above, we <u>affirm</u> the Title III court's decisions as to the pre- and post-petition claims that are the subject of this appeal.

---

are deemed waived).  In fact, they seem to have disclaimed at least the "immediate payment" request in their opening brief by arguing, "[a]s the record evinces, Appellant was not seeking immediate payment of the amounts in controversy; rather, Appellant was seeking to protect their legal rights by -- even if on a conditional basis -- hav[ing] the claim be deemed allowed as an administrative claim."